(No. 11004.)

THE CITY OF CHICAGO, Appellee, *vs.* JAMES F. LORD *et al.*— (JOHN GERINGER *et al.* Appellants.)

*Opinion filed December 21, 1916.*

1. EMINENT DOMAIN—*owner of land sought to be condemned is entitled to highest cash market price, based on its most valuable use.* In a proceeding to condemn property for widening a street the owner is entitled to receive for the land taken the highest cash market price, based on its most valuable use, that can be obtained when the petition for condemnation is filed; and where the owner is conducting a profitable business on the premises, which will be destroyed by reason of taking the property, such use should be considered in fixing the damages.

2. SAME—*when property should be valued as evidence shows it is worth for renting purposes.* In a proceeding to condemn property for the widening of a street, where about half of the lot and the building thereon will be taken, if the use to which such building is put is that of renting it to tenants, and such use would continue but for the contemplated improvement, a value should be placed on the property such as the evidence shows to be its present worth for renting purposes.

3. The other questions involved are controlled by the decision in *City of Chicago* v. *Lord,* (*post,* p. 544.)

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

WALTER TRUC, for appellants.

SAMUEL A. ETTELSON, Corporation Counsel, HARRY ATWOOD, EUGENE H. DUPEE, and TOLMAN, REDFIELD, & SEXTON, (ROBERT REDFIELD, and HENRY P. CHANDLER, of counsel,) for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Appellants in this case are the owners of sub-lot 1 of lot 4, block 68, of Canal Trustees' New Subdivision, etc., said lot being on the south side of West Twelfth street, in the city of Chicago, fronting 25 feet on the said street and being 90 feet deep, improved with a three-story brick building and known as No. 731 West Twelfth street. The north 42 feet of this lot were sought to be taken for public use in the same proceeding for the widening of Twelfth street which has heretofore received the consideration of this court in *City of Chicago* v. *Lord, (post,* p. 544.) The property in question is east of the Eberle lot mentioned in the opinion in that case, but one 25-foot lot intervening. By the final judgment of the court the appellants were awarded $7140 as compensation for land taken, being the north 42 feet of their lot, and $5500 as damages for the building situated thereon. An assessment of $920 on the remaining 48 feet of the lot awarded by the commissioners was confirmed.

It is assigned as error that the court erred in finding that just compensation for the land taken would not exceed the sum of $7140; in finding that just compensation for damage to the building would not exceed the sum of $5500; in failing to find that the remainder of the property not taken was damaged; and in finding that the assessment of $920 against the portion of the property not taken would not exceed the benefit to the remainder of said lot and would not exceed its proportionate share of the cost of said improvement.

The evidence as to the value of the premises in question was conflicting. The owners of the property, and several real estate men and business men who were familiar with the locality and with values and sales of property in that vicinity, valued the entire premises, including the building, at from $30,000 to $35,000. The ground floor of the building on the property is used for a store, the second and third floors for flats. The building is about thirty years old, and was rented, subsequent to the filing of this suit, for $200 a month. It is admitted that the building will be a total loss after the north 42 feet thereof are torn off in making the improvement. The value of the building, according to the witnesses for the appellants, is from $8300 to $8600, and according to witnesses for the city it is from $4300 to $4600. The witnesses for appellants fixed the valuation on the lot and building from $30,000 to $35,000 and valued the ground at $25,000, or about $11 a square foot, and the value of the land taken from $11,000 to $12,000. One of the owners of the building testified that he had received a cash offer of $29,000 for the property, and it appears that in 1911,—the same year this suit was commenced,—the adjoining property on the west (a lot of the same size, on which was erected a four-story brick building renting for $150 a month,) sold for $31,000 cash. It further appears from leases that were introduced and the testimony of witnesses that similar property in that neighborhood rented at about the same rate. The witnesses for the petitioners in the condemnation proceeding were the same witnesses whose evidence was heard in *City of Chicago* v. *Lord, supra.* These men did not reside in the neighborhood and had not done a great deal of business in the vicinity of the property in question, but had been employed by the city as experts on real estate values to examine the various properties along Twelfth street affected by the improvement, including the property of appellants, and testified as to the values and the

proper amount of compensation to be awarded for taking the land and the effect of the improvement on the property remaining. They fixed the valuation of the property in question at about $618 a front foot, or $6.80 a square foot, making the total value of the north 42 feet to be taken $7140.

Without in detail going into all the evidence of the witnesses for the respective parties, we are inclined to believe from a consideration of all the evidence, taking everything shown by the record into consideration, including the rental value of the property in controversy and that of the adjoining properties and the actual cash sales of other property and the offer for the property in question as shown in evidence, that the value of the land taken was greater than that fixed by the court, which was the minimum shown by the evidence. The appellants were entitled to receive for the land taken the highest cash market price, based on its most valuable use, that could be obtained when the petition was filed. (*Freiberg* v. *South Side Elevated Railroad Co.* 221 Ill. 508.) If appellants had been engaged in conducting a profitable business on the premises in question, which business would have been destroyed by reason of condemning and taking the property, such use of the premises would have to be considered in fixing the damages for such taking. The use to which this property was put by the owners was that of renting it to tenants. Such use of the property and its value for renting purposes seem to have been disregarded by the court in fixing this valuation. When the front 42 feet are taken and the building demolished appellants will be at the expense of erecting a new building on the remaining 48 feet of the lot. The witnesses for appellee furnished a plan for such a building three stories high which would cost from $7200 to $7400. One witness testified that such a building, in his opinion, would rent for $2100 per year, but the plans for such building are shown

not to comply with the building ordinances of the city, and according to the clear preponderance of the evidence, including the evidence of what buildings on lots of similar size are now renting for in that vicinity, the remainder of the lot, if improved by a building such as could be erected thereon and constructed according to the building ordinances, would not bring half as much rent as the present building on the premises. It does not seem reasonable that if the present building would rent for $2400 a year a building hardly more than half that size would rent for $2100 a year, as testified by witnesses for appellee, even when the street is widened. Of course, these witnesses were only giving their opinions of what they thought the property might be rented for, but their opinions are not supported by the facts and actual conditions shown by other evidence. We think it clearly appears from the evidence that by reason of taking the north 42 feet of the lot in question there will be a loss to the owners of the lot of about one-half the present income, or from $1000 to $1200 per year. Appellants were allowed $5500 for the building and $7140 for the land, or a total of $12,140. If they spend $7000 for the erection of a building, that will leave them $5140 net. They will then be receiving about $1000 a year less than they received before in rents. If they lose in the future $1000 a year rent, it would take $20,000 invested at five per cent to compensate them for that loss. This would bring the value of the land taken and the building near that fixed by witnesses for appellants. We think that a value should be placed on the property such as the evidence shows the property was worth for renting purposes, as that has been the use to which such property has been put and for which use it would continue but for the improvement.

We are also of the opinion that the value fixed by the court for the building on these premises was too low. The testimony of witnesses for appellants was that the cost of

the building on the premises in 1911 would have been from $11,000 to $12,000, and that allowing the customary depreciation of one per cent per year it was worth from $8000 to $9000 when the petition was filed. Witnesses for appellee fixed its original cost at about $8500 and estimated the depreciation on the building at from forty to forty-five per cent, making its value about $4600 when the petition was filed. Some of these witnesses and others estimated the cost of a new building of similar materials and construction but only a little more than half the size of the old, built on the 48 feet remaining, would be from $6500 to $7500. Such inconsistency makes this evidence of little value. If witnesses for appellee were correct in their estimate of the new building, then the cost of the old building was well within the range of the values fixed by witnesses for appellants. We think that the depreciation on the original cost of the building of from forty to forty-five per cent, as estimated by witnesses for petitioner, was excessive and such depreciation is not borne out by the evidence.

As to damages to the property not taken and benefits to it by reason of the improvement, the situation of the property is similar to that which was considered by the court in *City of Chicago* v. *Lord, supra,* and what is said in that case applies to the case at bar. We are not prepared to say that the court erred in not finding that the property not taken will be damaged or that the assessment is excessive.

For the reasons given, the judgment of the superior court will be reversed and the case remanded to that court for further proceedings in accordance with the views herein expressed.                    *Reversed and remanded.*