(No. 32654.-)

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* WILLIAM C. BOHNE *et al.,* Appellants.

*Opinion filed June 26, 1953.*

GOWER, GRAY & GOWER, EVA L. MINOR, and SAMUEL H. SHAPIRO, all of Kankakee, (DONALD GRAY, of counsel,) for appellants.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

In a condemnation proceeding instituted in the county court of Kankakee County by petitioner, Department of Public Works and Buildings, to acquire certain lands to relocate a State highway, the jury entered a verdict of $36,000 as compensation to the owners of the tract, defend-

ants William C. Bohne and Margaret Bohne, and to all interested parties, and a verdict of $4000 to be paid from that sum to the defendants Leland L. Bauer, Emory G. Bauer, and Clarence J. Bauer, for their leasehold interest in the premises. The court entered judgment on the verdicts, from which both the defendant landowners and the defendant lessees have prosecuted separate appeals.

The essential issues presented by these appeals are whether the trial court erred in the admission and exclusion of certain testimony, and in the submission of certain instructions to the jury; and whether the verdicts and judgment are supported by the evidence.

From the record it appears that the tract in question consists of five acres of land owned by defendants William C. Bohne and Margaret Bohne, and located east of the city of Kankakee, with a frontage of 300 feet on the south side of State highway 17 and extending back some 650 feet. The front or north 204 feet, extending along the highway for 300 feet was leased by the Bohnes to the Bauers, doing business as Bauer Trailer Park under a lease dated February 26, 1951, whereby the use of the property was restricted to trailer sales, parking and renting, filling station, or other retail purposes, for a term of 10 years at a rental of $100 a month, with the option of renewal by the lessees upon the same terms, and with the right to make improvements thereon. Upon the leased area is a building used as a salesroom by the Bauers, and a small cottage used as a washroom in connection with the trailer camp. Upon the remaining property held and owned by the Bohnes is their large six-room home, and a three-room cottage rented to their son-in-law.

Negotiations for the condemnation of this property had proceeded intermittently for a period of some 10 years. However, on November 27, 1951, condemnation proceedings were filed by the petitioner in the county court of Kankakee County, alleging that it was necessary to acquire

the lands described for the reconstruction of Federal Aid Route 26, a State highway. Separate trials were had as to each tract. The defendant lessees filed an answer alleging the facts with reference to their lease and their claim for compensation on the ground that their leasehold interest would be destroyed. They also requested that the court, before impanelling the jury, enter an order fixing the rights of the parties.

On petitioner's motion that answer was stricken. However, by amendment through interlineation the answer was called a motion, in which the Bohnes joined, and was allowed to stand. The court ordered that the jury to be impanelled should return three verdicts: to cover the entirety of the fee, the damages to the landlord, and the damages to the tenant.

Numerous witnesses testified with reference to the value of the leasehold and the entire property, and inasmuch as the propriety of the admission and rejection of such evidence by the trial court is an issue in this appeal, it is incumbent upon this court to review the testimony.

On behalf of the State, John Kreuger testified that he had been in the insurance and real-estate business in the vicinity of Kankakee for 30 years; that he was a member of the county, State and national real-estate boards; that he examined this property on March 22, 1951, and had gone by it several times a week since that time; that its highest and best use at the time of the filing of the condemnation petition on November 27, 1951, was either industrial, subdivision or its present use; that in his opinion the fair cash market value of the property was $31,534; and that he did not think there had been any real increase in the value of the property between the date of his appraisal in March, 1951, and the date the petition was filed, even though there may have been some improvements. He maintained on cross-examination that the improvements, which included the installation of water pipes, cesspools

and a gravel road, would not increase the value of the property because, he reasoned, these improvements made by the tenant belonged to him, and he could move them off, except perhaps the gravel road, and consequently none of the improvements would add to the value of the property. He reiterated that his opinion as to the value of the property was based on what he saw on March 22, and that there was a possibility that the best use of the property would be for subdivision purposes. Consequently, in arriving at the $31,534 appraisal, he considered the costs of using the property for that purpose.

With reference to the value of the lease, this witness stated that it was worth only the actual monthly value of the rent, and explained that that figure referred to the value of the lease to the landlord. Moreover, even to the landlord the lease was of no value since it was with an individual. He made no attempt to appraise the leasehold in any other respects, for he did not know its terms or of the option to renew, and discounted the lease as though it were not there in his appraisal of the property.

A motion to exclude his testimony on the ground that it did not take into consideration the lease on the property, or the improvements placed on the premises prior to filing of the condemnation petition, was overruled.

Petitioner also submitted the testimony of Louis Ray to establish the value of the condemned property. He stated that he had been in the real-estate, insurance and appraisal business in Kankakee for 28 years; that he examined the Bohne property in March, 1951, for the purpose of testifying; that the highest and best use of the property was its present use; and that its fair cash market value on November 27, 1951, was $32,000, and that the fair cash market value of the lease was $100 a month. On cross-examination he explained that he meant the value of the lease to the landlord, for the leasehold had no other value, since in his 28 years of experience he never heard

of a lessee selling his lease. He explained further that at the time his appraisal was made there were no trailers back of the salesroom; that he did not know whether the property was on the Kankakee or any other bus line; that he did not know what improvements were made between the date of his appraisal and that of the filing of the petition, but did not think that they increased the value of the property.

A motion to exclude his testimony on the ground that the witness did not know the value of the premises on the date the petition was filed was overruled.

The defendant lessees offered the testimony of some five witnesses in addition to that of Leland Bauer to establish the value of their leasehold interest. Bauer stated the terms of the lease and the nature of their business. He revealed that prior to the present lease they operated under another lease at a rental of $75 a month for about a year and the reason for negotiating the present lease was that the trailer park across the highway was going out of business and the tenants approached him for a place to park their trailers. The extension of time on the lease was necessary because of the extensive investment required to improve the property in order to properly park those tenants. Although the court refused to permit him to testify as to the cost or the value of the improvements, all of which were installed after the lease was signed, but prior to November 27, 1951, he did enumerate the improvements. Water lines were put in whereby each trailer had two water outlets, one on each side of the trailer; and water was put in the sales location for the filling station. Sidewalks were laid, a 28-foot gravel roadway, which extended some 700 feet, was built, a cottage was painted, remodeled and converted into washrooms, each of which contained showers and lavatories, an oil heater, and a hot-water heater. Defendants also installed a septic tank, underground wiring and landscaped the premises.

Bauer further testified that he was the vice-president of the Illinois Trailer Association, and a member of the board of governors of the national association, that he had worked in setting up other trailer parks, and that he owned land in Kankakee County. His opinion as to the fair cash market value of the leasehold interest on the date the condemnation petition was filed was that it could be leased for $325 a month.

Bertha Orr, testifying on behalf of the defendant lessees, stated that she has been in the retail and wholesale trailer sales business for some 18 years. Although she lives in Chicago, her contact with the national Trailer Association, of which she is on the Board of Governors, involved travel throughout the country, so that she is apprized of land values as they pertain to the trailer industry. She is particularly familiar with the situation in Illinois since she is President of the Illinois Trailer Association. She stated further that she was familiar with the Bauer property, which is excellently located for trailer sales since it is on a travelled road, close to the city, has public transportation to the door for the benefit of both the occupants and persons with whom they do business, has shade trees and affords an excellent means to display merchandise, since there is over 300 feet on the highway. She read the Bauer lease, and her opinion of the fair cash market value of the leasehold, or what it could be sold for in the open market to persons interested in trailer sales and parks would be $300 a month as of November 27, 1951.

The court allowed a motion to strike her testimony as to values on the ground that she was not qualified as an expert in Kankakee County.

The defendant lessees also offered the testimony of Herbert Reeves. He stated that although he presently lived in Elkhart, Indiana, and was a national sales representative of Florence Stave Company, he had lived in Kankakee where he had been in business for himself as a house-trailer

dealer some three blocks west of the Bauer property from April, 1947, to February, 1950, and that from February, 1950, to July, 1951, he had been sales and service manager for the Bauers. He was familiar with the property, the improvements, as well as with real estate generally, knew the terms of the lease, and on the basis of these considerations his opinion of the fair cash market value of the leasehold estate was $300 a month. A motion to strike his testimony was allowed by the court on the ground that he was not qualified as an expert on real-estate values.

The court also allowed a motion to strike the testimony as to values of Ray Speckman, real-estate broker in Kankakee for 7½ years, who testified on behalf of the lessees. He stated that he examined the Bauer property within the last 30 days, was familiar with the terms of the lease, that in his opinion the highest and best use of the premises was its present use, and that its value, after examining the sales reports and park rental income, was $259 a month over and above the rent reserved.

The witness Maurice Weaver, who also testified on behalf of the lessees, stated that he was a real-estate broker, handled trailer rentals and trailer parks, knew the premises occupied by the Bauers, had sold property about a half mile east of it, and had seen the lease. In his opinion the highest and best use of the property was its present use because of the physical advantages hereinbefore noted, and the fact that Kankakee is growing in that direction. His opinion was that the fair cash market value of the leasehold estate was $275 a month, and he explained that he took into consideration the time element of the lease, but not the business or profits involved. The court, however, struck his testimony with reference to values.

The testimony of the witness LeClair with reference to the value of the leasehold was permitted to stand. He testified that he had been in the real-estate business in Kankakee for more than 20 years, is president of the Kankakee

Real Estate Board, is familiar with the property in question, had read the lease, and in his opinion the fair cash market value of the leasehold, considering the facilities, location and duration of the lease, was $300 a month. The court, however, struck that portion of LeClair's testimony submitted on behalf of the defendants, William and Margaret Bohne, wherein he stated that in his opinion the fair cash market value of the entire property on November 27, 1951, was $45,000 plus the value of the leasehold, on the ground that he explained that he valued the trailer park separately from the home and lot.

The defendant landowners William and Margaret Bohne also offered the testimony of Lawrence J. Costello, a member of the Kankakee County Real Estate Board, who appraised the property within 30 days prior to the hearing. According to his opinion the fair cash market value of the premises on November 27, 1951, was $48,487, and its present use was its best use. The court allowed a motion to strike his testimony on the ground that he stated that he valued the building and land separately. The testimony of the witness Warmbir, on behalf of the defendant landowners, was permitted to stand. This witness stated that he was a real-estate agent, knew the property in question, had made a detailed examination of it, was familiar with the lease, and his opinion was that the value of the entire property, including the leasehold interest and all improvements, was $54,500.

Defendant William Bohne testified on his own behalf. He described the premises, including his large six-room home, and stated that he was familiar with real-estate values in the area, and that the property had a value of $57,000. On cross-examination he said that he knew of an 80-acre tract a half mile away which was sold by an estate for $64,000, but explained that it was just farm land, and also admitted having purchased 9½ acres of farm property without buildings or improvements for $12,350.

The court, despite its earlier order, submitted two rather than three verdicts to the jury: one for damages to the leasehold interest, and the other for damages to the entire property. As hereinbefore noted the jury fixed the damages to the leasehold interest at $4000 and the damages to the entire property at $36,000. The court overruled motions for a new trial, and entered judgment on the verdicts from which both the lessees and the landowners have appealed.

The defendant lessees maintain that the measure of their damages is the value of the leasehold estate subject to the rent; that the petitioner had the burden of introducing evidence on the value of that interest; that the testimony of the witnesses Weaver, Orr and Reeves was erroneously stricken; that instructions 5, 7, 12 and 13, given on behalf of the petitioner, were erroneous because they ignored the leasehold estate; that instructions 26 and 27 offered by the lessees should have been given; and that the verdict fixing their damages is not within the range of the evidence. They also question the constitutionality of the Freeway Act, but recognize that the decision in the pending case of *Department of Public Works and Buildings* v. *Lanter*, which subsequently sustained its constitutionality, 413 Ill. 581, would be determinative.

The defendant landowners argue that the testimony of petitioner's witnesses, Krueger and Ray, was erroneously admitted; that the valuations of LeClair and Costello should not have been stricken, particularly since there was no objection made when they were testifying, and that the amount of compensation fixed by the jury is not within the range of the evidence.

It is apparent that the Bauers, as lessees under a 10-year lease, with a renewal option at the same terms, had an interest for which compensation should properly have been awarded in this condemnation proceeding. (18 Am. Jur. 865; 29 C.J.S. 988.) The measure of their damage was the fair cash market value of the leasehold subject to the

rental. (*Corrigan* v. *City of Chicago,* 144 Ill. 537; *Yellow Cab Co.* v. *Howard,* 243 Ill. App. 263.) That market value was enhanced by the option to renew, which, in effect, extended the lease to a term of 20 years, (29 C.J.S. 990; *In re Triborough Bridge Approach of New York,* 288 N.Y.S. 697,) and by the permanent improvements, notwithstanding the fact that they would revert to the lessor on termination of the lease. (*Carlock* v. *United States,* 53 Fed. 2d 926; *United States* v. *Block,* 160 Fed. 2d 604; *Bales* v. *Wichita Midland Valley R. Co.* 141 Pac. 1009 (Kan.), 29 C.J.S. 1050, 1051.) It is the petitioner, moreover, who has the burden of proving the fair cash value of the property to be taken, including the value of this leasehold interest, as defendant lessees contend. *Chicago, Burlington and Quincy Railroad Co.* v. *Reisch & Bros.* 247 Ill. 350.

The only evidence submitted by petitioner with reference to the value of the leasehold estate was the testimony of the witnesses Krueger and Ray. Krueger never read the lease, knew nothing of the option for extension, made no attempt to appraise the leasehold, and explained that the $100-a-month value which he ascribed to the lease referred to its value only to the landlord. He had no knowledge of the improvements effected by the lessees, since he appraised the property prior to their installation, and more than 8 months before the petition was filed. Under these circumstances, it is not clear how his testimony can be construed to sustain in any way petitioner's burden of establishing the value of the leasehold interest.

Krueger's testimony as to the value of the entire property was also objectionable, since it was not based on the condition of the property at the date of the filing of the petition, (*Public Service Co.* v. *Leatherbee,* 311 Ill. 505,) and overlooked the permanent improvements, which enhanced the value of the premises. (*Forest Preserve Dist.* v. *Caraher,* 299 Ill. 11; *Forest Preserve Dist.* v. *Kercher,* 394

Ill. 11.) Where private property is taken for public use, the owner is entitled to the fair cash market value based on the most valuable use of the premises on the date the petition was filed, (*City of Chicago* v. *Lord,* 276 Ill. 357,) including anything upon it which enhances its value.

The testimony of petitioner's only other witness, Louis Ray, did not sustain the burden of establishing the value of the leasehold interest either, inasmuch as the witness merely stated the value of the lease to the landlord. Furthermore, his valuation of the entire property, just as the witness Krueger's, should have been stricken on the ground that it was predicated upon an appraisal of the premises in March, 1951, some eight months prior to the filing of the petition, and prior to the installation of the aforementioned improvements, and consequently failed to include those values in the computation.

With reference to the propriety of the court's striking the evaluations of the lessee's witnesses, Orr, Weaver and Reeves, it is established that in condemnation proceedings the value of land is a question of fact to be proved the same as any other fact, and any person acquainted with it may testify as to its value. It is not necessary that a witness be an expert, or be engaged in the business of buying and selling the kind of property under investigation. "Any person may testify in such cases who knows the property and its value for the uses and purposes to which it is being put." *People ex rel. McDonough* v. *Goldberg,* 354 Ill. 423, 429; *Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538.

It is apparent that these witnesses, in contrast to those of the petitioner, were and had been in the business of trailer sales and parks, which was the best use of the leased premises as of November 28, 1951. Moreover, they knew the particular property, and all stated that it was peculiarly well suited for its present use since it had a 300-foot frontage on a State highway where the trailers could be displayed, was near Kankakee, which was growing in that

direction, was on a bus route, had city water and lights, and was well shaded. It was error to strike the testimony of Bertha Orr on the ground that she did not qualify as an expert in Kankakee County, for her testimony revealed that she knew the property, the terms of the lease, was particularly qualified to judge the value of the property for trailer sales, since, as president of the Illinois Trailer Association she was familiar with land values throughout the State as they pertain to the trailer industry. Her lack of special experience in Kankakee County merely went to the weight of her testimony.

The valuations of the leasehold interest offered by the witnesses Weaver and Reeves were also improperly stricken, for they both knew the property, the terms of the lease, and were particularly familiar with the trailer sales and park business in Kankakee, even though they did not live in the town at the time the proceedings were instituted.

The valuations of the entire property given by the witnesses LeClair and Costello, on behalf of the defendant landowners, William and Margaret Bohne, were also erroneously stricken by the court. The fact that the witnesses stated that they considered the leased portion of the premises, and the Bohne home and lot, as distinct elements in arriving at the value of the entire property, would not render their testimony objectionable. *City of Chicago* v. *Callender,* 396 Ill. 371.

The defendant lessees contend that the court erred further in the submission and rejection of jury instructions. This court is aware of the prevailing judicial disposition against reversing a cause on the ground of a technical error in instructions where the jury is otherwise correctly instructed as to the law. In the instant case, however, where petitioner offered no evidence as to the value of the leasehold interest, and the court erroneously struck the testimony of three of the lessees' witnesses, the correctness of the instructions was vital.

Instruction 7 given by the court, by which the jury was informed not to allow defendants anything in addition to just compensation for the *lands,* by implication directed the jury to overlook the leasehold interest. Instruction 5 was objectionable for the same reason; for, by informing the jury that "your deliberation should be confined entirely to determining the just compensation to be paid the *owners of the lands* to be taken in this proceeding," the instruction stressed only the interest of the Bohnes, and overlooked the interest of the lessees. Instruction 12, which provided that "the petitioner is condemning *only the real property* described in the petition together with the permanent improvements thereon," implied that the leasehold interest was not included in the condemnation, and created confusion since the jury was also required to assess the damages to the leasehold estate separate from the land. It is evident, therefore, that these instructions were misleading, under the circumstances, and should not have been given.

The court finds that instructions 26 and 27, submitted by the lessees, correctly stated the law, and inasmuch as no other instruction set forth the rule pertaining to the measure of the lessees' damage, it was error for the court to refuse to give instruction 27.

Both the lessees and the landowners urge that the verdicts fixing their respective damages are not within the range of the evidence. There is no quarrel with the established rule in eminent domain cases that where the jury has viewed the premises, as in the instant case, and the amount fixed is within the range of the evidence, the verdict will not be disturbed, unless there has been a clear and palpable mistake, or the verdict is the result of passion or prejudice. *Forest Preserve Dist.* v. *Kercher,* 394 Ill. 11.

With reference to the $4000 verdict for the leasehold interest, it appears that the sum bears no relation to the

evidence. The petitioner offered no evidence of the value of the leasehold interest to the lessees, and the only other evidence in the record permitted to stand was the testimony of Leland Bauer and Maurice LeClair who valued the leasehold at $325 and $300 a month, respectively. The lease with the renewal option had 19 years and some 3 months to run when the condemnation petition was filed. Even if those monthly valuations were discounted for cash, and the rent reserved under the lease deducted therefrom, it is not clear how the jury could have selected $4000 as damages on the basis of the evidence. Or even if the jury relied upon the $100 a month figure, which petitioner's witnesses stated was the value of the lease to the land-owner, it is not perceptible how the jury could return a verdict of $4000 for a 19-year lease, or—even without the renewal option—a 10-year lease. Under these circumstances, it is evident that despite the fact that the jury viewed the premises its assessment of damages to be paid the lessees was not predicated upon or within the range of the evidence, and should have been set aside. *City of Chicago* v. *Callender*, 396 Ill. 371, 380.

Similarly, the verdict of $36,000 for the condemnation of the entire property, whereby the sum of $32,000 would be allowed the landowners after the lessee's damages were deducted, is also unsupported by the evidence. For while petitioner's witnesses, Kreuger and Ray, valued the premises at $31,534 and $32,000 respectively, their appraisals not only excluded the leasehold interest, but were made prior to, and without knowledge of substantial permanent improvements, such as the roadway, the water system, the sidewalks, the installation of a septic tank, and the landscaping, all of which enhanced the value of the property as devoted to its highest use. The only other testimony permitted to stand in the record was that of the witness Warmbir, who valued the premises at $54,500, and that of

the defendant William Bohne, who appraised his own property at $57,000. Under these circumstances, the jury verdict does not appear to be supported by the evidence, and defendants' motion for a new trial should have been sustained.

On the basis of the foregoing analysis, it is our judgment that the county court of Kankakee county erred in the admission and rejection of evidence, in the submission of instructions to the jury, and in the denial of defendants' motions for a new trial. Therefore, the judgment of that court must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*