JOSEPH P. WILUSZ *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, Js.

Argued December 3, 1964—decided January 26, 1965

*Joseph P. Wilusz,* pro se, the appellant (plaintiff).

*Frederick D. Neusner,* assistant attorney general, with whom, on the brief, were *Harold M. Mulvey,* attorney general, and *Milton H. Richman,* assistant attorney general, for the appellee (defendant).

ALCORN, J. On April 20, 1960, the defendant, the highway commissioner, took 10.31 acres of the plaintiff's land for highway construction purposes, and thereafter, on May 27, 1960, took an additional .19 acre for the same purposes. The defendant assessed damages for the entire taking at $3900. The plaintiff appealed to the Superior Court, claiming that the damages assessed were inadequate. A motion to amend the appeal to attack the legality of the taking was filed but was not pursued, and the trial court took no action on it. The case was referred to a state referee, who heard the evidence pursuant to § 13-150 of the General Statutes (now

§ 13a-76) and found the plaintiff to be entitled to damages of $11,000. The plaintiff moved to correct the referee's report. Certain corrections were made by the referee, and the court overruled the plaintiff's objections to the amended report, accepted the report as amended, and rendered judgment thereon.[1] The plaintiff has appealed from the judgment. He requested a finding, but the court properly made none, since it had heard no evidence. *Sorensen* v. *Cox,* 132 Conn. 583, 587, 46 A.2d 125.

The plaintiff was represented by counsel at all stages of the appeal through and including the referee's correction of his original report. Beginning, however, with the filing of objections to the acceptance of the referee's amended report, the plaintiff undertook to handle the case personally, without the assistance of counsel. From that point on, the proceedings have become understandably and unnecessarily complicated. A number of motions have been made in this court by the plaintiff and have been decided. *Wilusz* v. *Ives,* 152 Conn. 725, 203 A.2d 674; s.c., 152 Conn. 730, 204 A.2d 168. Numerous other motions made to this court were pending when the appeal came on for argument, and these motions we consider in the footnote.[2]

---

[1] The referee's failure to number the paragraphs of his report is a practice which we have discountenanced. *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 139 n., 204 A.2d 833.

[2] On November 9, 1964, the plaintiff moved to amend his assignment of errors, to assert error in the failure of the referee to view the premises. See General Statutes §§ 13-150, 13a-76. The plaintiff did not raise this issue in the trial court, and the motion therefore seeks to raise an issue not ruled upon and decided below. The motion is denied. Practice Book § 652.

On November 9, 1964, the plaintiff moved for a continuance in order to permit the joinder of this appeal with an appeal in a case

Of the plethora of errors assigned, some are inaccurately stated, repetitious, abandoned, or concerned with matters not in issue in the case. We construe the issues which the plaintiff is attempting to raise to be that the damages awarded in the judgment are inadequate in that the referee erred (a) in failing to take into account the presence of valuable deposits of sand and gravel in the land taken, (b) in considering the cost of installing drainage pipes as a separate item of damage, (c) in failing to include damages for the potential flooding of the plaintiff's land in future storms, (d) in failing to compensate the plaintiff for the landlocking of some 34.6 acres of his remaining land, and (e) in refusing to allow a witness produced by the plaintiff to testify concerning the gravel deposits in the land.

---

pending in the Superior Court and in order to rectify his appeal as requested in a motion filed in the trial court. On November 12, 1964, the plaintiff filed another motion to join this appeal with the case pending in the Superior Court referred to in the motion of November 9. On November 12, the plaintiff filed another motion for a continuance pending decision on a motion to correct filed with the referee and on the motions to amend his assignment of errors and to join appeals filed in this court. Another ground for the continuance is to permit the printing of a remonstrance to the acceptance of the referee's report, but no such remonstrance appears in the file. These various motions are denied. The case with which the plaintiff would join this appeal does not appear to have gone to judgment in the trial court. The motion to correct filed with the referee was improperly addressed to the referee subsequent to final judgment. The motions made to this court are decided.

On November 12, 1964, the plaintiff filed a motion for rectification of the appeal with the trial judge, and the motion was granted in part on November 25. The resulting corrections and additions are minor, available to this court in the file, and do not materially affect the issues on this appeal.

On November 25, 1964, the plaintiff filed a motion to review the partial rectification of appeal by the trial court on the ground that the court failed to act on the motion to rectify on the day it was heard. The motion was granted, in part, the next day, and the motion for review is moot.

The land taken was a portion of 125 acres owned by the plaintiff on which he conducted what is described as a marginal farming operation. The property has been used by the plaintiff over the years for cutting wood, farming and the sale of sand and gravel. Beyond this usage, the plaintiff has, to some extent, used gravel and fill from the land in grading and constructing driveways for others. The highway for which the land in issue was taken bisects the plaintiff's land, and it is the plaintiff's contention that the construction of the highway interferes with the free access which he formerly had to all of his land and has left about 34.6 acres landlocked. The plaintiff claims, further, that the construction has subjected his remaining land to drainage from the highway and has created a diking situation which will subject him to flooding in future storms.

The referee found that the taking does bisect the plaintiff's land and has resulted in some depreciation in value. He found that the access to 34.6 acres of the land was partially destroyed but was reinstated when the state took an additional .19 acre and constructed a fifty-foot road on it which gave the plaintiff access to the area. The .19 acre thus referred to was the land taken by the defendant on May 27, 1960, as stated above. The referee found that the highway did drain water onto the plaintiff's land but that this condition did not appear to be serious. He found further that the plaintiff's house was not taken but would be depreciated in value because of the proximity of the highway, and that the well supplying water to the house would have to be relocated. A large shed or chicken coop which was used by the plaintiff when he raised chickens was taken. The referee concluded that the value of the

land taken amounted to $5250, that the plaintiff's dwelling house was depreciated $1000 in value, that the barn or chicken coop taken had a value of $1500, that the cost of digging a new well would be $1500, and that the bisecting of the farm and the drainage onto the 34.6 acres north of the highway would depreciate the value of that portion by $50 an acre, or a total of $1730. The sum of these items, $10,980, was rounded out by the referee to $11,000, and the court accordingly awarded damages in that amount.

We consider first the plaintiff's claim that the referee failed to take into account the presence of deposits of sand and gravel on the land taken. It is clear that the presence of any such deposits properly enter into the determination of the market value of land taken for a public purpose. *Hollister* v. *Cox,* 131 Conn. 523, 526, 41 A.2d 93. While the referee's report does not specifically mention deposits of sand and gravel, it appears that two real estate appraisers offered by the plaintiff did consider the sand and gravel deposits in computing the market value of the land and that the valuation placed by one of these appraisers on the whole ten and one-half acres taken was only $215 more than the value found by the referee. The conclusion seems obvious, therefore, that the referee did not overlook the presence of sand and gravel deposits in the acreage taken in arriving at his estimate of fair compensation.

The referee indicated in his report that installation of drainage pipes at a cost of $30,000 would be unwarranted. Consequently, he disallowed it. The plaintiff claims that the referee erred in considering this item separately rather than as an element entering into the market value of the land. The plaintiff is in no position to make this complaint

since it appears that he attempted, by his own witness, to induce the referee to treat the solution of the claimed drainage problem as a separate item rather than as an element affecting market value. The referee concluded, as already indicated, that the drainage condition did not appear to be serious and that the bisecting of the land and the drainage onto 34.6 acres of it would depreciate the value of that portion by $50 an acre. The referee thus considered the seriousness of the drainage problem and its effect on the value of the 34.6 acres. This item, along with the other items which the referee enumerated in his report, made up the difference between the market value of the plaintiff's whole tract as it lay before the taking and the market value of what remained of it after the completion of the public improvement. *Andrews* v. *Cox,* 127 Conn. 455, 457, 17 A.2d 507. The method adopted by the referee for reaching his ultimate conclusion embraced the elements of damage claimed by the plaintiff and therefore was not harmful. *Sorensen* v. *Cox,* 132 Conn. 583, 586, 46 A.2d 125.

The plaintiff's third claim is that the referee erred in failing to include damages for the possible future danger from the backing up of flood waters in arriving at his estimate of the market value of the property remaining after the construction of the highway. The claim was based on a possibility which the plaintiff's own expert conceded was remote. The referee could reasonably have concluded that the possibility of danger from this source was too speculative to be considered. *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 688, 67 A.2d 851; *Gabriel* v. *Cox,* 130 Conn. 165, 169, 32 A.2d 649. We discuss this claim to this extent because of the peculiar circumstances of the present case, even though the

plaintiff is making the claim for the first time on this appeal. The plaintiff did not object, in the trial court, to the referee's report on this ground.

The plaintiff's fourth claim is that the referee erred in finding that 34.6 acres of his remaining land was not landlocked. The referee's finding concerning this matter has been stated above. The burden of the plaintiff's claim seems to be that, since the fifty-foot access strip which the defendant provided was never conveyed personally to him and was not properly a part of the state highway system, this means of access, although it now exists, could at any time be taken from him. The defendant offered evidence that the access roadway had been made a part of the state highway system and that the 34.6 acres were accessible by the use of it. The referee was entitled to believe this testimony, and consequently his conclusion is not open to attack. *Housing Authority* v. *Pezenik,* 137 Conn. 442, 445, 78 A.2d 546; *Dion* v. *Dion,* 128 Conn. 416, 417, 23 A.2d 314.

The plaintiff's final claim is that the referee erred in refusing to allow Weldon Parris to testify concerning the quality of the gravel deposits on the plaintiff's land. Parris was a land surveyor and conceded his inability to qualify as an expert on the mineral content of soil. The referee was justified in excluding this testimony. The ruling loses significance in any event since, as already indicated, the plaintiff's real estate experts, who did testify, considered the sand and gravel content of the land in stating their opinions as to the value of the land.

There is no error.

In this opinion the other judges concurred.