CANTERBURY REALTY COMPANY *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued November 3, 1965—decided January 13, 1966

*Alexander Winnick,* for the appellant (Saidel).

*Joseph Adinolfi, Jr.,* with whom was *Frances Allen,* for the appellee (plaintiff).

ALCORN, J. The lessee of part of a parcel of land condemned by the highway commissioner has appealed from a judgment accepting a referee's amended report, which found the lease to be valueless. The highway commissioner is a bystander in the appeal, which involves only the question what, if any, part of the total damages awarded for the taking of the fee should be paid to the holder of the leasehold interest.

On June 14, 1962, the highway commissioner filed a notice of condemnation of all or parts of five parcels of land owned by Canterbury Realty Company, henceforth referred to as Canterbury. The land taken contained altogether about 12.91 acres, and the commissioner assessed damages of $118,800 for the taking. Harry Saidel is the lessee of about 1.7 acres of one of the parcels. The lease was dated in November, 1957. Canterbury appealed to the Superior Court for a reassessment of the damages, and the court appointed a state referee to make the reassessment. General Statutes § 13-150 (now § 13a-76). Saidel appeared in Canterbury's appeal and filed a motion reciting that he had been served with a copy of the notice of the taking and that he had, by virtue of his lease, an interest in the compensation being determined, and he requested the appointment of a referee to value his leasehold and apportion, between Canterbury and him, the amount to be paid by the highway commissioner. The court appointed the same referee to make that determination, and Canterbury and Saidel stipulated

that the value of Saidel's leasehold interest be determined in Canterbury's appeal.

The referee held hearings on three days in June and July, 1963, following which he found and reported the fair value of Canterbury's fee in the five parcels condemned to be $167,800. He found the value of the 1.7 acres leased by Saidel to be $17,000. Counsel for Saidel attended the two hearings in June but absented himself from the July hearing. He did not, however, object to the referee continuing with that hearing. The referee's report as to the valuation of the fee was accepted by the court, judgment was rendered thereon on December 6, 1963, and no appeal was taken.

In October, 1963, the referee had heard further evidence offered by Saidel concerning the value of his lease. On January 10, 1964, the referee filed a separate report, in which he concluded that Saidel's lease had no value. Saidel filed, as permitted by Practice Book § 358, a motion seeking extensive corrections in the report. The referee granted some of them and denied the rest. Saidel then filed exceptions and objections to the acceptance of the amended report, in substance reiterating to the court all of the claims for corrections which the referee had refused to grant. The court accepted the amended report with one minor change and ordered funds which had been held in the hands of the clerk awaiting a determination of the value of the lease paid over to Canterbury. It is from that action that this appeal is taken.

Saidel does not pursue, in his brief, any claim concerning corrections in the report, and we treat that subject as abandoned. *Mims* v. *Kingsley*, 145 Conn. 7, 10, 138 A.2d 520. The points of attack on the judgment are that the court erred in accepting

the referee's report because the appraisal on which it was based was improperly considered, because it made no allowance for the lessee's cost of improving the leased land, and because it adopted a valuation which disregarded renewal options in the lease, including the projected future value of the leased land.

The referee's failure to number the paragraphs of his report creates an unnecessary burden in dealing with the appeal. See *Research Associates, Inc.* v. *New Haven Redevelopment Agency*, 152 Conn. 137, 139 n., 204 A.2d 833; *Wilusz* v. *Ives*, 152 Conn. 352, 354 n.1, 206 A.2d 841. It would have been proper for the trial court to have recommitted the report for this reason. We find the report difficult to follow. At the outset it appears to postulate that Canterbury could have terminated Saidel's lease at any time before the condemnation so that Saidel lost nothing by the taking. It then appears to give consideration to the unexpired portion of the original term of the lease and to fix a value for that without giving effect to renewal options. In sum, we take it that the referee concluded that the lease had until March 1, 1968, to run, that Saidel's option to renew had no value because it was not exercised before the taking, that the value of the fee in the leased land was $17,000, and that the lease was valueless because the economic rent was exceeded by the rent reserved in the lease.

It is clear from the report that the valuation of the fee in the leased land was based upon a consideration of evidence offered at the hearings in June and July and that the referee refused to credit the testimony of Saidel's appraiser given at the October hearing. Saidel's claim that the referee erred in considering the expert testimony given during the

earlier hearings, at one of which Saidel's counsel was not present to cross-examine, has no merit. Saidel had stipulated that the value of his lease was to be determined in Canterbury's appeal from the highway commissioner's assessment of damages. The amount to be paid for the taking of his leasehold could not exceed the amount to be paid for the fee in the leased land. General Statutes § 48-21. Consequently, the hearings concerned with the valuation of the fee were of the utmost importance to him. Since Saidel's counsel chose not to be present at all of them, he cannot now be heard to complain of the referee's reliance on evidence then offered, found credible, and resulting in a decision from which no appeal was taken. Under the stipulation of the parties, the referee was entitled to utilize the evidence offered at all of the hearings which he held in the case as a basis for arriving at valuations for both the fee and the lease.

Nor did the referee err in the rule which he applied for evaluating the leasehold interest in land the value of which he had already determined. The value of the lease is properly arrived at, in the case of a complete taking, by subtracting the rent provided for under the lease from the fair market value of the lease. *United States* v. *Petty Motor Co.,* 327 U.S. 372, 381, 66 S. Ct. 596, 90 L. Ed. 729; *New Jersey Highway Authority* v. *J. & F. Holding Co.,* 40 N.J. Super. 309, 316, 123 A.2d 25; Jahr, Eminent Domain, p. 197; 4 Nichols, Eminent Domain § 12.42 [3].

The crucial point is the referee's conclusion, in substance, that Saidel's right to renew the lease was of no value because it was not exercised before the condemnation. The lease, by its terms, ran for a period of ten years from March 1, 1958, or from

the date a building to be built on the land by Saidel was ready for occupancy. The latter alternative is irrelevant because no building has been erected. Canterbury reserved the right to terminate the lease at the end of the ten-year period, or at any time thereafter upon compensating Saidel, at stipulated rates, for any buildings constructed on the land by the lessee. Saidel could not assign the lease or sublet the premises without Canterbury's consent, but he had the option to renew the lease for three terms of five years each. This option was required to be exercised in writing not less than sixty days before the end of the term or before the end of any renewal period.

The confusing manner in which the report deals with the lessor's right to terminate the lease weakens the force of the conclusion which the referee draws from it. At one point the report states that the lessor had the right to terminate the lease on March 1, 1958. At another point it states that the right to terminate existed as of March 1, 1978. Finally it states: "The right to share in any award by reason of an option is dependent on whether or not the option to renew has been exercised. The right to exercise the options in question had not been exercised by the date of condemnation [June 14, 1962], as provided in the lease."

The terms of the lease make it clear, however, that the lessor had no right to terminate the lease on either March 1, 1958, or March 1, 1978. Saidel, on the other hand, had the right to renew the lease at any time up to sixty days before the expiration of the ten-year term, or, in other words, until January 1, 1968. In the event that he exercised that option, he then had two additional renewal options open. On June 14, 1962, when the taking occurred, the

original term of the lease had nearly six years to run with the possibility, if the options were exercised, of an extension of fifteen years more.

In approving the referee's conclusion that Saidel's lease was of no value because the option to renew had not been exercised before the taking, the court was in error. Every kind of right or interest in property which has a market value must be compensated for in condemnation proceedings. *Campbell* v. *New Haven,* 101 Conn. 173, 178, 125 A. 650; *Stamford* v. *Vuono,* 108 Conn. 359, 368, 143 A. 245. Saidel, as lessee, was entitled to receive, as nearly as possible, a fair equivalent in money for the loss of his lease. *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693; *Winchester* v. *Cox,* 129 Conn. 106, 114, 26 A.2d 592; see *McGowan* v. *Milford,* 104 Conn. 452, 456, 133 A. 570. In a determination of what this amount should be, all elements legitimately affecting the value of the lease should be considered. See *Eljay Realty Co.* v. *Argraves,* 149 Conn. 203, 206, 177 A.2d 677. The renewal options which, if exercised, would serve to convert the lease from one having nearly six years left to run into one having nearly twenty-one years of potential life were, therefore, elements properly to be considered in a determination of the value of the lease. *United States* v. *425,031 Square Feet of Land,* 187 F.2d 798, 800 (3d Cir.); *Department of Public Works* v. *Bohne,* 415 Ill. 253, 262, 263, 113 N.E.2d 319; *Hercey* v. *Board of Chosen Freeholders,* 99 N.J. Eq. 525, 526, 133 A. 872; *New Jersey Highway Authority* v. *J. & F. Holding Co.,* 40 N.J. Super. 309, 316, 123 A.2d 25; *Oklahoma City* v. *Garnett,* 296 P.2d 766, 769 (Okla.); Jahr, Eminent Domain, p. 197; see also *Matter of City of New York (North River Water Front),* 118 App.

Div. 865, 867, 103 N.Y.S. 908. Since these elements were not considered in the evaluation of Saidel's lease, the case must be remanded for further proceedings.

We do not overlook the provisions in the lease under which Canterbury reserved the right to terminate it, under specified conditions, at any time after the expiration of the original ten-year term. We cannot say, as a matter of law, however, that these provisions rendered the lease of no value to Saidel. *Hoffman Wall Paper Co.* v. *Hartford,* 114 Conn. 531, 537, 159 A. 346. Whether the lease, including the options to renew, has a value under all the circumstances disclosed and, if so, what that value is is a question of fact for determination under established procedures.

The only other claim raised in this appeal is that it was error to refuse to allow Saidel to introduce evidence of the expenses incurred by him in improving the land. These costs arose from filling a low, swampy area to the grade of the abutting highway. The question before the referee was the fair market value of the land. That value as testified to and as considered and found by the referee was based on the land in its filled state. Thus the value of the filled land would necessarily be reflected in any value of the leasehold based on the value of the fee. *Matter of City of New York (Delancey Street),* 120 App. Div. 700, 707, 105 N.Y.S. 779. The specific items of expense incurred in making the improvement were not pertinent. *Carlock* v. *United States,* 53 F.2d 926, 927 (D.C. Cir.). The referee was correct in refusing to consider them.

There is error, the judgment is set aside so far as it purports to determine the value of the lease of Harry Saidel and the case is remanded with

direction to reject the report concerning the value of that lease and proceed thereafter according to law.

In this opinion the other judges concurred.