JOSEPH B. WHEWELL ET AL. *v.* HOWARD S. IVES,
HIGHWAY COMMISSIONER

ALCORN, HOUSE, COTTER, RYAN and COVELLO, Js.

Argued October 11—decided November 29, 1967

*Francis J. Pavetti,* with whom were *Louis C. Wool* and, on the brief, *Ralph P. Dupont,* for the appellants (plaintiffs).

*S. Victor Feingold,* assistant attorney general, with whom, on the brief, were *Harold M. Mulvey,* attorney general, and *Jack Rubin* and *Milton H. Richman,* assistant attorneys general, for the appellee (defendant).

COTTER, J. The plaintiffs appealed to the Superior Court from the assessment of damages by the defendant in the sum of $15,200 for the taking of their property described to be necessary for the construction of the highway known as interstate route 95, Groton-Stonington Road. General Statutes § 13a-76. The matter was referred to a state referee for reassessment of damages. The referee heard witnesses, viewed the property and filed a report in which he found the total damages to be $55,400. The referee denied a motion of the plaintiffs for leave to introduce additional testimony and also denied their motion to correct the report. The court overruled the plaintiffs' exceptions to the report, accepted it, and found the sum of $55,400 to be the fair amount of damages.

The referee found the following facts: The property taken by the defendant is a segment of a right

of way or pentway, so-called. This was the sole means of access to 169.25 acres of rear land owned by the plaintiffs in North Stonington and on which were situated their residence and the outbuildings used in a dairy farm business conducted by them. The house, built in 1850, had only a lavatory and no bath and was outmoded in other respects, such as having the milk room attached to it. The pentway ran a distance of several hundred feet from the public highway to the plaintiffs' land. The taking left the plaintiffs' 169.25 acres landlocked. The referee found that the land had a value at the time of the taking of $250 per acre and a value after the taking of $25 per acre, and he therefore allowed $225 an acre as damages. The valuation of the buildings as found by the referee is not in issue.

On this appeal, the plaintiffs claim that the damages which were awarded in the judgment are inadequate in that the referee was in error in not allowing a greater valuation for a portion of the land on which it is claimed there were deposits of sand and gravel, that the referee was in error in characterizing the sale of a contiguous parcel of land as a comparable sale without evidence of similarity and likeness to the land in question, and that the referee failed to consider, as evidence, awards made in three other condemnation cases which the plaintiffs claim involved comparable properties.

The first two claims of the plaintiffs have to do with the valuation of the portion of the property on which it is claimed there existed deposits of sand and gravel. Specifically, the plaintiffs' position is that fifty acres of the total acreage should have been found by the referee to have had a value at the time of the taking of $750 an acre, as appraised by one of their witnesses. They base this claim on the assump-

tion that that portion, as testified to by their witness, was worth that amount per acre, which would make a total valuation of $37,500 on that portion alone and thereby add $25,000 to the total amount awarded by the referee. In support of this assertion, they claim that the referee recognized this valuation, and so found, but diminished or reduced the value because of limited access to the plaintiffs' land. They further claim that the referee could not reduce the value, having so found, because there was no "direct evidence" to support his finding of a limitation of access, and that there was direct evidence to the contrary.[1]

Four expert appraisers testified, and their appraisal reports were admitted as full exhibits, giving valuations as of the time of the taking of $25,000, $26,000, $102,400 and $110,000 respectively. Three of them testified that the highest and best use of the property was that of a dairy farm. One of the three, upon being questioned by the referee, stated that "if it was accessible" he would say its use as a "sand and gravel pit would be the highest and best use." The fourth appraiser testified that the highest and best use of the land was that of a potential residential use, ten or twelve years in the future. Since the property did not front on a highway, access to the property was an important consideration especially where it was stated by one appraiser for the plaintiffs that its highest value depended on the development of the interior land for residential purposes or that a portion of it could be used on a commercial basis for mining sand and gravel. The right of way or pentway was about

---

[1] Much of the difficulty is created by the referee's failure to set forth numbered paragraphs in his finding. Practice Book § 354; *Wilusz* v. *Ives*, 152 Conn. 352, 354 n.1, 206 A.2d 841.

sixteen feet in width and had been used by the plaintiffs in the conduct of their dairy farm business. There was testimony that a buyer "would have a tough time getting a road in there" and that the property was rather far from the road, which would make it costly to put in a fifty-foot road to the property. Although there was evidence that there was gravel in the southeast corner of the land at the brook area, no gravel had been sold at any time.

The referee was not compelled, as the plaintiffs claimed, to accept the appraisal of one of the plaintiffs' experts that a fifty-acre portion, which he described as "cleared land (including gravel area)," had to be valued at $750 an acre because of the sand and gravel deposits. The opinions offered varied considerably as to the character of the land. The total area was described in various ways and quantities as containing cleared land, scrub land, swampland, brush-pasture land and gravel area. The referee gave consideration to the presence of sand and gravel on the land in question and found that its value was reflected in the value he placed on the land and that the testimony produced by the plaintiffs as to value, attributable in part to this element, was much too high. In this connection, the plaintiffs claim that the referee erroneously found that the use of the land was limited because of limited access. This was a proper factor for the referee to weigh in arriving at a proper evaluation.

A plethora of evidence was introduced through witnesses and in statements contained in the exhibits as to comparable sales, but this evidence was almost wholly concerned with property located on a road or public highway. The property in question, when originally acquired by the plaintiffs, included an additional tract of approximately eighty-two acres

which they sold off to Edward E. and Dorothy M. Davis in 1960 for an amount estimated to be $150 an acre. The referee reported that he considered all the comparable sales and found that the Davis sale in 1960 of a contiguous parcel at $150 an acre was the most comparable. The character of the Davis property was thoroughly and fully gone into at the hearing before the referee, and on the basis of all the evidence before him, he was not in error in considering that sale along with all the other evidence and in arriving at an average of $250 per acre for the total property. Adequate support for the referee's finding on valuation appears in the exhibits and the testimony of the witnesses, together with the referee's view of the land which furnished evidence of its character and that of the right of way. *Altman* v. *Hill,* 144 Conn. 233, 237, 129 A.2d 358. "In arriving at the value of property, no one method is controlling, and there is no rule of law that any particular method of valuation must be followed. It is a matter of opinion based on all the evidence and, at best, is one of approximation. . . . The trier may accept or reject the testimony of an expert offered by one party or the other in whole or in part." *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 348, 232 A.2d 307. It is elementary that the trier is the final judge of the credibility of the evidence and the weight to be given to it. *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641.

The plaintiffs claim error in the refusal of the trial court to remand the case to the referee for further proceedings to permit the introduction and consideration of awards in cases decided prior to and subsequent to the instant case in which awards were given for the taking of similar properties. The court did not err in refusing to permit proof

of the awards in other cases. The awards were inadmissible since they were not evidence of valuations made in an open market and under circumstances where the owner and purchaser agreed on the price of the property. *Chicago* v. *Lehmann,* 262 Ill. 468, 473, 104 N.E. 829; *Georgia Power Co.* v. *Brooks,* 207 Ga. 406, 409, 62 S.E.2d 183; 29A C.J.S. 1205, Eminent Domain, § 273 (7); 27 Am. Jur. 2d 335, Eminent Domain, § 430; see *DelVecchio* v. *New Haven Redevelopment Agency,* 147 Conn. 362, 363, 161 A.2d 190.

The grounds upon which the plaintiffs filed exceptions to the report or finding of the referee were contained in their motion to correct that report. This motion related that there was no evidence to support the conclusions of the referee as to the limited access to the land and that the plaintiffs' evidence was uncontroverted as to sufficient and adequate access in order to take out sand and gravel. The plaintiffs asserted that "the more substantial and weightier evidence" supported the plaintiffs' position that the Davis sale was not comparable. They claimed further that there was substantial and uncontroverted evidence that the land in question contained a rich supply of sand and gravel so that the opinion of their appraiser should be adopted as to the value of the fifty-acre portion on which these deposits were claimed by them to exist.

The court will not correct a referee's finding of fact unless a material fact has been found without evidence, unless there was a failure to find an admitted or undisputed fact, or unless a fact has been found in such doubtful language that its real meaning does not appear. Practice Book § 359. The plaintiffs have not fully complied with this rule.

We are bound in the present case by the reasons advanced in the trial court by the plaintiffs for seeking corrections to the report as incorporated in the exceptions to the report by reference. We can only consider claimed errors which were properly raised in the trial court unless they arose subsequent to trial. Practice Book § 652. Grounds for correction of the report must be properly stated as required by Practice Book § 359.

There was credible evidence to support the report, and the subordinate facts support the referee's conclusion. The court did not err, as claimed by the plaintiffs, in overruling the plaintiffs' exceptions to the report of the referee and in accepting the report.

There is no error.

In this opinion the other judges concurred.