JOHN E. TOFFOLON ET AL. *v.* TOWN OF AVON

CONNECTICUT SAND & STONE CORPORATION *v.*
TOWN OF AVON

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and WALL, Js.

Argued June 9—decision released October 4, 1977

*Paul W. Orth,* with whom was *Robert C. Hunt, Jr.,* town, attorney, for the appellant-appellee (defendant in the first case) and for the appellee (defendant in the second case).

*Steven D. Bartelstone,* with whom was *A. Ned Rogin,* for the appellees-appellants (plaintiffs in the first case) and for the appellant (plaintiff in the second case).

LONGO, J. In the *Toffolon* case, the defendant, the town of Avon, has appealed from a judgment rendered by a state referee who, exercising the powers of the Superior Court, reassessed the damages sustained by the plaintiffs in the taking of their land.

The defendant claimed that the assessment was excessive and the plaintiffs cross appealed, claiming that the award was inadequate. In the *Connecticut Sand and Stone* case the plaintiff (hereinafter CSS), the owner of land contiguous to that of the plaintiffs in the *Toffolon* case, has appealed from the failure of the court to award severance damages resulting from the defendant's taking. By agreement of counsel, the two actions were consolidated and tried together.

In the *Toffolon* case, the defendant on appeal has assigned as error the refusal of the court to find the facts set forth in sixty-one paragraphs of its draft finding, claiming them to be admitted or undisputed; the finding of twenty-three paragraphs of facts without evidence; the finding of facts in language of doubtful meaning in seventeen paragraphs of the finding; the reaching of unsupportable conclusions in twenty-four paragraphs of the finding; and the overruling of eleven claims of law—a, total of one hundred thirty-five claims of error. The court refused corrections. In the cross appeal the plaintiffs have assigned approximately thirty-five errors.

This court strongly disfavors such an unwieldly method of presenting an appeal. *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 646, 345 A.2d 550; *Pawlinski* v. *Allstate Ins. Co.,* 165 Conn. 1, 3, 327 A.2d 583; *Warner* v. *Warner,* 124 Conn. 625, 639, 1 A.2d 911. It is futile to assign error involving the weight of testimony or the credibility of witnesses. *Hartford-Connecticut Trust Co.* v. *Putnam Phalanx,* 138 Conn. 695, 699, 88 A.2d 393; *McMahon* v. *Malloy,* 109 Conn. 505, 506, 147 A. 26. Because of the nature of the attack we do not dis-

cuss those claims in detail. We have examined them and have concluded that the finding is not subject to corrections which will affect the result.

The following facts are among those found by the court: On October 26, 1972, the defendant, the town of Avon, pursuant to the provisions of General Statutes § 8-129, filed a statement of compensation in the amount of $83,112 for three contiguous parcels of land, consisting of approximately 73.4 acres, owned by the plaintiffs, John E. and Roger L. Toffolon. A portion of that land, parcel 2 of parcel A, with which this appeal is principally concerned, contained 61.3 acres, and upon this land the plaintiffs operated a sand, gravel and earth material removal and processing business. The town later filed an amended statement of compensation alleging that CSS was a lessee of the Toffolon property and was allowed to remove sand and gravel for a five-year period commencing July 26, 1971. CSS also owned a contiguous parcel of land, parcel B, located south of the Toffolon property, consisting of open land with two man-made ponds used in connection with the processing of earth materials from both CSS's property and the Toffolon property. Both properties were located in an industrial zone and operated as prior nonconforming uses. Located on the southerly side of the Toffolon property was a processing and crushing plant approximately 400 feet long and 91 feet in height which weighed several thousand tons and was owned by CSS. The court found that the depreciated value of the processing plant, together with the depreciated cost of land preparation, drainage, sewers and roads was $324,800.

Following extensive hearings, the court visited the premises and reached the following conclusions:

The highest and best use of the plaintiffs' land at the time of taking was as an earth material excavation and processing operation; the fair market value of a portion of the plaintiffs' property (parcel 2 of parcel A) consisting of 61.3 acres was $183,900, computed at $3000 per acre; the nonconforming use of the premises as an earth material excavation operation had not been abandoned; there was earth material remaining to be processed on parcel 2 consisting of 200,000 cubic yards of sand and gravel, 2,000,000 cubic yards of glacial till and 1,700,000 cubic yards of ledge which could be excavated and sold; and the processing plant had to be regarded as a fixture and an integral part of the real estate and its value had to be included in the taking. The court awarded the plaintiffs the sum of $494,900 for their land and the processing plant, together with interest and appraisal, expert witness, engineering and surveying fees.

Essentially, the plaintiffs claim that there were large quantities of valuable earth materials which were excavatable, processable and salable in an active operation being conducted as a nonconforming use in an industrial zone. The defendant claims that the land had been largely depleted of the valuable sand and gravel; that the operation had been dormant for years until just before the taking, and that the processing plant had no significant remaining useful life.

The defendant, the town of Avon, in its appeal, and the plaintiffs, in their cross appeal, have challenged the court's valuation of the land at $3000 per acre. The plaintiffs offered the testimony of appraisers who valued the land at $17,000 and $17,500 per acre. The defendant offered the testimony of appraisers who suggested valuations

between $1250 and $1400 per acre. One of the defendant's appraisers, Peter Marsele, was allowed to return to the stand and offer an alternative appraisal of $3000 per acre based on recent sales of sand and gravel banks in the area. The court arrived at the same ultimate valuation which the defendant now claims was excessive and which the plaintiffs claim was inadequate. The trier of fact is free to accept or reject in whole or in part expert testimony offered by either party and may give constructions to the evidence which are at variance with the claims advanced by the parties. *Gentile* v. *Ives,* 159 Conn. 443, 270 A.2d 680, cert. denied, 400 U.S. 1008, 91 S. Ct. 566, 27 L. Ed. 2d 621; *Whewell* v. *Ives,* 155 Conn. 602, 236 A.2d 92. Further, "[n]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641. With these principles in mind, we cannot conclude that it was error for the court to decide as it did. The defendant contends that the court erred in concluding that there was a sufficient quantity of valuable earth materials remaining in the land to increase its value. We note only that there was evidence from which the court could reasonably have concluded that eighteen earth materials exclusive of sand and gravel had been excavated from the property, processed and sold in the past and that there was evidence that substantial quantities of those materials remained in the land.

The plaintiffs, in challenging the valuation as inadequate, contend that the court failed to consider that the use of the land was nonconforming, that there was a going business located on the premises and that the parcel was unique. The plaintiffs

acknowledge that the expert testimony of Marsele was based on sales of similar land in the area. Though those parcels were not identical to the parcels in question they did serve as a valid basis for his valuation. Furthermore, it is clear from the findings and conclusions that the court was conscious of and considered all those factors mentioned by the plaintiffs. We conclude that the court's determination that the land was worth $3000 per acre was based on credible testimony and was neither logically nor legally inconsistent with the subordinate facts found. *Whewell* v. *Ives,* supra.

The defendant contends that CSS had abandoned stockpiled processed earth materials located on parcel A. The court found that at the time of the taking there were stockpiles of processed materials on parcel A including 25,000 tons of sand, stone and gravel which had been excavated during 1971 and 1972. Severed earth materials, like topsoil or fill, are personal property which if not removed from the owner's land can be found to have been intentionally abandoned. *Sharkiewicz* v. *Lepone,* 139 Conn. 706, 96 A.2d 796. A question of intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be reached. *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 102 A.2d 366; *Glotzer* v. *Keyes,* 125 Conn. 227, 5 A.2d 1. In support of the claim of abandonment, the defendant relies upon the fact that the plaintiffs failed to remove the stockpiled materials following the sending of three letters by the defendant's counsel in the spring of 1973 demanding removal of all personal property. The trial court's conclusion of nonabandonment, however, was amply supported by the findings that

in the fall of 1972, following the filing of the certificate of compensation on October 26, 1972, the plaintiffs painted the processing plant at great expense, that there was considerable activity in November, 1972, and that in March, 1973, shortly before the three letters were sent, the plaintiffs sold about 33,000 tons of stockpiled materials. Further, the record discloses that the plaintiffs had instituted their appeal in March, 1973, shortly before the letters had been sent to the plaintiffs.

The defendant claims that the lessee, CSS, had reached the limits of the original extraction rights set forth in the 1954 agreement, and that only gravel and fill could be excavated. This claim does not have merit. The court found that both parcel 2, owned by Toffolon, and parcel B, owned by CSS, had been used in conjunction for the excavation and processing of sand, stone, gravel, ledge and eighteen other types of earth materials since August, 1954, a date prior to the adoption of the zoning regulations. These findings were not attacked by the defendant and are conclusive. Furthermore, this claim has been raised for the first time on appeal.

The defendant's claim that the proposed extension of the nonconforming use would be limited by Avon's earth removal regulations is also without merit. The trial court specifically found that the premises were not subject to zoning restrictions and that conclusion was not attacked by the defendant. The defendant has never attempted to enforce the regulations as they applied to the nonconforming use and the contention that it could do so in the future is speculation.

The defendant further contends that the court erred in declaring the processing plant a fixture and

in awarding damages for the taking. The defendant claims that the plant could be removed without damage to the realty and that it had been treated as personal property for all purposes, including transfers by bills of sale and declarations for local tax purposes. The question is not whether the plant was a fixture, as between tenant and landlord, but whether it was a fixture as between owner and condemnor. "It frequently happens that, in the case of a lease for a long term of years, the tenant erects buildings upon the leased land or puts fixtures into the building for his own use. It is well settled that, even if the buildings or fixtures are attached to the real estate and would pass with a conveyance of the land, as between landlord and tenant they remain personal property, and, in the absence of a special agreement to the contrary, may be removed by the tenant at any time during the continuation of the lease provided such removal may be made without injury to the freehold. This rule is, however, entirely for the protection of the tenant and cannot be invoked by the condemning party. If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, but in apportioning the award they are treated as personal property and credited to the tenant." 2 Nichols, Eminent Domain (Rev. 3d Ed.) § 5.81, subsection 2; *In re Acquiring Certain Property on North River, City of New York,* 118 App. Div. 865, 867, 103 N.Y.S. 908. Upon an examination of the premises, the court concluded that the plant must be regarded as a fixture and an integral part of the real estate as between the plaintiffs and the defendant and its value included in the taking based on the following factors: the nature of its construction which required its attachment to deep and broad foundations; its cost of removal compared to

its reproduction costs; its ponderous size and difficulty in removal; its special adaptation to the property and considerable value taken in connection with the sand, gravel, stone and other earth materials remaining in the land; its small value as a chattel and its lack of suitability to any other place unless specially prepared for it at great expense. Further, upon its view of the premises, the court determined that the plant could not be moved from the land without injuring the property.

Under the provisions of § 8-125 (f) real property for the purposes of taking is defined as "land, subterranean or subsurface rights, *structures* . . . and every estate, right or interest therein." (Emphasis added.) Every structure which has "been erected and affixed to the soil so far as to become part of the real estate" is taken by the condemnor as a matter of law and "the value of the buildings must be considered in determining the compensation to be awarded to the owner." 2 Nichols, Eminent Domain (Rev. 3d Ed.) § 5.81 (1). In the early case of *Capen* v. *Peckham,* 35 Conn. 88, 94, the court recognized the difficulty in laying down a rule of universal applicability. The court stated: "[I]t is essential to constitute a fixture that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which that part of the building was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a permanent accession to the freehold was intended to be made by the annexation of the article." See *Merritt-*

*Chapman & Scott Corporation* v. *Mauro,* 171 Conn. 177, 368 A.2d 44; *Lesser* v. *Bridgeport-City Trust Co.,* 124 Conn. 59, 198 A. 252.

In *Giuliano Construction Co.* v. *Simmons,* 147 Conn. 441, 443, 162 A.2d 511, the court stated: "Whether a permanent accession to the freehold was intended is to be determined from a consideration of all the facts, including the character of the annexation, the nature and adaptation of the article annexed to the uses and purposes to which the land was appropriated at the time of the annexation, and the relation of the annexer to the property." On the basis of the court's findings and from the viewing of the premises by the court there was a reasonable basis for a determination that the processing plant, as between the town of Avon and the owner of the Toffolon land, was a fixture at the time of taking and that its value should be entitled to be considered in awarding compensation. See *Cleaveland* v. *Gabriel,* 149 Conn. 388, 180 A.2d 749.

The defendant claims that by using the reproduction less depreciation method of valuation the court improperly determined the value of the processing plant in that (a) there was no finding that a prudent investor would reproduce the plant because of functional depreciation of the area; (b) the remaining supply of sand and gravel, even on the adjoining parcel, would last only a few years; (c) the lease held by CSS, the owner of the plant, was unlikely to be renewed after three and one-half years; and (d) the plant owner's sworn tax declarations to the town had been a small percentage of the value found by the court. We do not agree. The court found that the highest and best use of the property was as a sand, stone and gravel processing operation and

that the plant was in excellent operating condition. There was sufficient evidence to support the court's conclusion that a considerable amount of material remained in the Toffolon property as well as on the CSS property which could be excavated, processed and sold. The plant was specially adapted for the use which had been carried on from 1954 to the date of taking in 1972 and, under the lease, the use could continue for a further three and one-half years. Thus, the plant was, in fact, adapted to a prospective use which affected the market value of the land, and the court was entitled to consider whether the use of the premises was economically feasible. See *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 414, 270 A.2d 549. From those findings, the court could properly determine that there was no functional depreciation of the area.

In the light of the facts that there was a significant amount of valuable material to be processed remaining on the land and that the trial court found the highest and best use of the property to be its continued operation to produce earth materials, it was proper for the court to use the reproduction less depreciation method of valuation. In the light of those facts, a determination whether the town would have renewed the lease after three and one-half years would not have significantly affected the result. This method was used by the defendant's witness, Marsele, without objection at trial. The defendant cannot now be heard to complain.

The defendant further claims that the plant's value should be reduced based on the lower amounts stated in the owner's personal property declarations. The defendant correctly states the general rule that an owner's tax valuations are admissions

against interest. 27 Am. Jur. 2d, Eminent Domain, § 441. The court admitted that evidence and incorporated it in its finding. It was not required to regard it as conclusive.

On June 18, 1975, the court concluded the trial after all parties had rested. On June 25, the court, on its own motion, opened the hearing for the purpose of permitting one of the defendant's appraisers, Marsele, to give an alternative appraisal report on parcel 2 of parcel A of the Toffolon land as well as on 25.64 acres of CSS's property. The plaintiffs' objection to the opening of the trial and to Marsele's additional testimony was overruled. The plaintiffs duly excepted and have assigned the ruling as error on their cross appeal. Marsele had previously testified that the highest and best use of parcel 2 was for residential development in accordance with the comprehensive plan of the town of Avon. At the opened hearing the appraiser was permitted to evaluate the land as a sand and gravel bank with substantial quantities of good quality sand and gravel.

Whether or not a trial court will permit further evidence to be offered after the close of testimony in a case is a matter resting in the sound discretion of the court. "In any ordinary situation if a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." *Hauser* v. *Fairfield,* 126 Conn. 240, 242, 10 A.2d 689; *State* v. *Chapman,* 103 Conn. 453, 479, 130 A. 899.

In explaining the reason for opening the trial the court stated that it was troubled by the fact that it had excluded two of the defendant's exhibits for identification, not because they were not relevant but because they had been filed late, resulting in lack of notice to the plaintiffs. Upon reconsideration, after the trial was completed, the court concluded that the plaintiffs had had adequate notice of the information contained in the exhibit in question and allowed its admission and testimony thereon. The court gave the plaintiffs the opportunity to present direct evidence as well as to cross-examine, either at the opened hearing or at some future date. It is apparent that the court, upon reconsideration, decided that the exhibit in question was relevant evidence upon a material issue in the case which was necessary to prevent a miscarriage of justice and to enable the court to render a decision. We find that the court did not abuse its discretion in opening the trial for the purpose stated and did not err in permitting Marsele to testify to an alternative valuation.

CSS, in its appeal in a separate action, claims that the court erred by denying it severance damages as compensation for the loss in value of parcel B, in which it owned the fee, owing to the taking of parcel A, in which it had a leasehold.[1] The court concluded that while the necessary elements of contiguity and unity of use existed between the two parcels, the third required element, unity of ownership, did not exist. See 4A Nichols, Eminent Domain (Rev. 3d Ed.) § 14.31. While CSS owned parcel B in fee, it was only a tenant on parcel A under a lease expiring in 1976. Ownership of parcel A was

---

[1] The defendant's claim that it was error for the court to expunge its special defense of lack of jurisdiction is without merit.

divided between the Toffolons, who held an undivided 17/18 interest, and the town of Avon, which held the remaining undivided 1/18. The lower court correctly ruled that there was no basis for piercing the CSS corporate veil to reveal that CSS was controlled by the Toffolons and that both parcels were effectively owned by the same individuals. The general rule is that "[t]he corporate entity will not be disregarded merely for the benefit of the individual stockholders when the corporate form works to their detriment or disadvantage, such as for the purpose of establishing a single user or unity of use so as to allow increased damages in condemnation or eminent domain proceedings." 1 Fletcher, Corporations § 41.2, p. 180.

It remains, however, to determine whether there was sufficient unity of ownership between the two parcels to allow the plaintiffs to recover severance damages. Ordinarily, when two tracts of land are owned by the same person and the taking of one diminishes the value of the other, severance damages will be allowed. Since CSS held one of the parcels in question in fee and held a lease on the other, the question becomes whether the lease is a sufficient interest in the parcel to establish unity of ownership. In this case it appears to be sufficient. This court has recognized that an individual is entitled to compensation for "[e]very kind of right or interest in property which has a market value"; *Canterbury Realty Co.* v. *Ives,* 153 Conn. 377, 384, 216 A.2d 426; including a lease; *Slavitt* v. *Ives,* 163 Conn. 198, 303 A.2d 13. Though some cases have indicated that a person seeking severance damages must hold the same quantity or quality of interest or estate in both tracts; *United States* v. *Honolulu Plantation Co.,* 182 F.2d 172 (9th Cir.), cert. denied,

340 U.S. 820, 71 S. Ct. 51, 95 L. Ed. 602; 27 Am. Jur. 2d, Eminent Domain, § 320; 6 A.L.R.2d 1204, § 2; the more reasonable view seems to be that as long as the same person has some compensable ownership interest in two tracts, he need not have the identical quantity or quality of interest in each; *State of Idaho ex rel. Symms* v. *Nelson Sand & Gravel, Inc.,* 93 Idaho 574, 468 P.2d 306; 95 A.L.R.2d 893–902, §§ 3–7; 27 Am. Jur. 2d, Eminent Domain, § 320. This rule is particularly reasonable in this case since the two parcels were used jointly to produce earth materials. The only value of the plaintiff's lease rested in the use of the parcel to produce earth materials. The two tracts were in use as one unit for the same purpose. When the contiguous parcel was taken, the usefulness of the remaining parcel was impaired. Whether the plaintiff held a lease or owned the parcel in fee, the plaintiff was injured. See *Chicago & Evanston R. Co.* v. *Dresel,* 110 Ill. 89; *Jonas* v. *State,* 19 Wis. 2d 638, 121 N.W.2d 235. The plaintiff had approximately three and one-half years remaining on its lease and was entitled to such severance damages as it could prove it had sustained as a result of the taking. We do not agree that as a matter of law three and one-half years is too short a period for which to award damages. The damages may by proper evidence be subject to calculation and the plaintiff entitled to compensation.

In the first case there is no error.

In the second case the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.