[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Walter Darcey, sues the defendant, Atlas Hobbing and Tool Co., for unpaid rent, the removal of certain fixtures from the demised premises located at 40 Kingsbury Avenue, Tolland, and for property damage to that premises. The defendant denies owing any back rent and claims it was justified in removing the property and damaging the premises in the process. The defendant also contends that the plaintiffs failure to clear ice and snow from an adjoining driveway contributed to CT Page 9850 the delay in the defendant's vacating the premises. On July 11, 2002, the court heard a trial to the bench, and the court finds the following facts.
Located at 40 Kingsbury Avenue is a 10,000 square foot commercial building which is divided into several separate rental spaces each consisting of around 1,000 to 2,000 square feet of floor area. The plaintiff acquired the property in 1978. He originally leased the portion of the building which is the subject of this suit to a Karl Kole. Kole installed lighting fixtures and a stretch of "bus duct." Bus duct is an electrical conduit which is affixed by screws to the exposed surface of the walls or ceiling and which provides the specialized electric power outlets commonly needed by industrial machinery.
In 1988, Kole sold his business to an entity known as Zayco. Zayco purchased the equipment and furnishings from Kole and leased the space from the plaintiff. Zayco operated a machine shop and, on occasion, was a subcontractor for the defendant.
The defendant is a corporation solely owned and operated by Michael Ramick. The defendant manufactures injection molds for plastic parts and has plants in Bridgeport and New Jersey. One of the defendant's prime customers is the U.S. Surgical company. The defendant relied on its subcontractor, Zayco, to fulfill its contractual obligations to that client.
In the early 1990's Zayco experienced financial troubles and fell nine months behind in rent owed to the plaintiff. The plaintiff threatened eviction of Zayco, which would adversely affect the defendant's ability to satisfy its customers. As a result, the defendant came to the rescue of its vital subcontractor and agreed to buy the machine shop from Zayco and operate it directly. In order to effectuate this transition, the defendant also agreed to pay the plaintiff $3,000 against Zayco's rent arrearage. The defendant bought Zayco's business, equipment, and other property for $244,000. In June 1993, the defendant executed the first of a number of written leases with the plaintiff and converted the machine shop into both a machine shop and plastic mold factory.
The plaintiff and defendant renewed the lease every two years with adjustments downward in the rental rate because the defendant eventually found it needed less space for its operation. The defendant also installed more bus duct, added commercial light fixtures, and constructed a small room enclosing a climate sensitive piece of equipment.
On January 1, 1999, the last lease between the parties was signed. Rent was set at $925 per month payable on the first day of each month. CT Page 9851 Paragraph ten of that lease prohibits the defendant from altering, adding to, improving, or installing fixtures to the leased premises without obtaining the plaintiffs written consent beforehand. Any remodeling or installation consented to became the property of the landlord. This provision was present in all the previous leases, also.
During its tenancy, the defendant frequently paid rent late. This often provoked the plaintiff to issue reminders of the dereliction to the defendant. Dispute arose over the exact amount owed. Part of the confusion arose because the defendant counted the $3,000 payment noted above as advance rent, while the plaintiff maintained that that sum applied to the arrearage of Zayco, the previous tenant. The court finds that the $3,000 payment was made against Zayco's arrearage for the purpose of inducing the plaintiff to allow the defendant the opportunity to assume Zayco's business and was never paid as advance rent.
On November 9, 2000, the plaintiff notified the defendant in writing that he wished to sell the building and contemplated no renewal of the lease upon expiration. Also, on November 10, 2000, the plaintiff had a notice to quit served upon the defendant for nonpayment of rent.
The defendant hired professional movers to facilitate its vacating of the premises. These movers encountered difficulty in driving away with a load of the defendant's property because of an icy patch in the driveway leading to the bay doors of the leased premises. In order to gain traction, the driver apparently rocked the moving truck backwards and forwards. Unfortunately, the driver was unaware that, while reversing the truck, he kept knocking against the steel I-beam header above the bay until it was several inches out of position. This created an unsafe condition which delayed the rest of the move for about one month while the damage could be repaired and safety restored. The plaintiff makes no claim for damages caused by this blunder except for the use and occupancy prolonged by the delay.
During the move, the defendant removed about eighty feet of bus duct, the commercial light fixtures, and a 400 amp electric service panel. The defendant has utilized these materials elsewhere. Also, the defendant's employees used a reciprocating saw to carve a hole in a wall to the room which housed the climate sensitive equipment because the doorway to that room was too narrow to permit extrication of the machinery. The wires which had been connected to the electric service panel and light fixtures were left dangling.
 I
As to the plaintiffs claim of unpaid rent, after a consideration of CT Page 9852 that evidence, the court concludes that the defendant owes the plaintiff four months of unpaid rent at a rate of $925 per month for a total of $3,700.
The delay caused by the damage to the bay header was in no way attributable to the plaintiff. There was no evidence adduced that it was the plaintiffs responsibility to remove ice and snow from the driveway. Also, the defendant chose the movers whose negligence caused the delay. The court discerns no mitigating circumstance from this event which would lessen the amount owed to the plaintiff.
 II
As to the defendant's removal of the bus duct, light fixtures, and 400 amp electric service panel, the court concludes that this property belonged to the plaintiff and was unlawfully removed by the defendant.
A fixture is an article annexed to the real property and intended to be a permanent accession to that property, State v. Rosenfield, 141 Conn. 188,192 (1954). The court finds that when the bus duct was installed by the defendant's predecessor, Kole, and later added to by the defendant, its purpose was to provide electric power to industrial machinery on a permanent, and not temporary, basis. Likewise, the court concludes that the commercial lighting and electric panel box were intended to be affixed to the building permanently. No business could have been conducted on the premises without electricity and adequate artificial lighting. Electric service conduits have been held to be fixtures,Vallerie v. Stonington, 253 Conn. 371, 373 (2000). These items, installed with screws and wiring from the electrical panel box, were not equivalent to an extension cord or plug-in lamp. These items were hard-wired and performed in situ for a period of years.
The defendant correctly points out that even a fixture is regarded as the personal property of the tenant if the tenant installed the fixture under Toffolon v. Avon, 173 Conn. 525, 532 (1977). As such, the item may be removed by the tenant when vacating the premises, Id. However,Toffolon v. Avon, supra, is inapplicable to the present case.
First, some of the bus duct that the defendant removed was present when Kole occupied the space. Toffolon v. Avon, supra, specifically refers to fixtures put "into the building for [the tenant's] own use." Id. The defendant cannot rely on Toffolon v. Avon, supra, to justify removing fixtures which predated its occupancy.
With respect to the remaining material, the statement of the rule inToffolon v. Avon, supra, expressly limited a tenant's authority to remove CT Page 9853 fixtures to circumstances "in the absence of a special agreement to the contrary," Id. In the present case the parties in their lease agreements stipulated that fixtures installed by the defendant became the property of the plaintiff.
The defendant also argues that because it installed these fixtures without the plaintiffs consent, in contravention of the express terms of the lease, paragraph ten of the lease, which conveys ownership of such fixtures to the landlord, is ineffective. This appears to be a "two wrongs make a right" argument The defendant was forbidden from installing fixtures without the written consent of the plaintiff. It cannot now be heard to claim that, because it violated the lease by unilaterally installing the fixtures, it can also violate the plaintiffs rights to fixtures by removing them. Such a rule would reward a tenant for breaking the lease and encourage such violation to occur. The court holds that the defendant promised not to install fixtures without the plaintiffs consent and is estopped from arguing lack of consent to avoid the effect of the lease provision.
There are two essential elements to estoppel, Lasalle National Bank v.Freshfield Meadows, LLC, 69 Conn. App. 824, 838 (2002). First, one party must act in a way intended or calculated to induce another to believe certain facts and act upon that belief; and second, the other party acts detrimentally based on that belief, Id. Neither actual fraud or bad faith is required, Steinegger v. Fields, 37 Conn. Sup. 534, 538 (1980).
The defendant's express promise not to install fixtures without the written consent of the plaintiff induced the plaintiff to engage in a landlord-tenant relationship with the defendant. Had the defendant expressed an unwillingness to abide by such a provision, the plaintiff could have refused to rent to the defendant or required a clause stipulating that even unauthorized fixtures became the plaintiffs property. Consequently, the defendant is estopped from making this argument.
The court finds that approximately eighty feet of bus duct was unlawfully removed from the premises. At a value of around $25 per foot for a loss of $2,000. The removal of around forty feet of commercial lighting fixtures, worth about $25 per eight foot length, constitutes a loss of $125. The plaintiffs reasonable expenses to secure the dangling wires and replace the electric service panel was $1,086.40.
 III
The damage to the wall and doorway caused when the defendant sawed a hole therein to remove the climate sensitive equipment was $318 and is CT Page 9854 also compensable.
 IV
Finally, the plaintiff claims he is entitled to legal fees under the lease agreement. Paragraph sixteen of the lease states that the defendant "shall also pay to the landlord, as soon as ascertained, the cost and expenses by the Landlord, including reasonable fees, relating to suchreletting" (emphasis added). The legal fees generated by the present litigation are unrelated to reletting the premises, instead they pertain to recoupment of back rent, the conversion of property, and damage to the premises. Consequently, no attorney's fee are awarded.
Judgment enters for the plaintiff against the defendant in the amount of $7,229.40 ($3,700 plus $2,000 plus $125 plus $1086.40 plus $318).
Sferrazza, J.