JOHN GIGLIOTTI ET AL. *v.* A. EARL WOOD, COMMISSIONER OF TRANSPORTATION, ET AL.

COTTER, LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued March 15—decision released May 30, 1978

*Thomas B. Wilson,* with whom, on the brief, was *I. Charles Suisman,* for the appellants (plaintiffs).

*Thomas A. Flaherty,* with whom, on the brief, was *Reuben S. Midler,* for the appellee (defendant New London Shopping Center, Ltd.).

LONGO, J. This action concerns the apportionment of damages for a partial taking by the named defendant, the commissioner of transportation, who has no interest in the appeal. On August 19, 1971, the plaintiffs were the owners of certain real estate in New London consisting of 1.265 acres. Their property had a southern frontage of 197 feet on Vauxhall Street and a northern frontage of 180 feet on South Service Road, which is also known as South Frontage Road. The land was vacant, with a hard surface, and was leased to the defendant New London Shopping Center for twenty-five years from September 13, 1955, at an annual rental of $6000, with two options to renew the lease for twenty-five years on the same terms. New London Shopping Center, a limited partnership, owns and operates a large shopping center near interstate

route 95, comprising approximately seventeen acres, of which approximately 4.15 acres are leased in three parcels, one of them being the plaintiffs'. The plaintiffs' land was used to provide parking spaces.

On August 19, 1971, for the improvement of interstate route 95, the commissioner of transportation took by eminent domain the right of access from the plaintiffs' property to South Service Road, and the right to construct curbing and a paved median on the property. No land was taken. The plaintiffs appealed to the Superior Court from the commissioner's award of $28,000 in damages for the partial taking. The case was referred to a state referee, who, exercising the powers of a trial court, found the fair market value of the plaintiffs' property prior to the taking to be $258,000, and its fair market value after the taking to be $215,000, and reassessed the damages to the land at $43,000. No further appeal was taken and the amount of the award therefore became res judicata.

New London Shopping Center was not a party to the plaintiffs' appeal, but by various stipulations it was agreed that the $43,000 be deposited by counsel in an escrow account until the award had been apportioned by agreement or by the court. Upon motion and stipulation, the apportionment dispute was referred by the court to another state referee, to be decided pursuant to General Statutes § 48-21. The parties stipulated that after deducting attorneys' fees and other agreed-upon costs, there was a balance of $39,048.34 in the escrow account. The referee awarded $1000 to the plaintiffs for damages to their fee interest and $1000 for appraisal and testimony fees. The remainder of the escrow fund, $37,048.34, was awarded to New London Shop-

ping Center for damages to its leasehold interest and for appraisal and testimony fees. From that judgment the plaintiffs have appealed to this court.

The thrust of the plaintiffs' attack upon the referee's findings of fact and conclusions of law is that New London Shopping Center suffered no economic damage to its leasehold interest from the taking, and that consequently the plaintiffs are entitled to the entire award.[1] For a leasehold to suffer damages, it must have a value. Generally a leasehold has a value if the fair market rental value of the property, sometimes called economic rent, is in excess of the rent reserved in the lease. *Canterbury Realty Co.* v. *Ives*, 153 Conn. 377, 382, 216 A.2d 426. In the case of a total taking of property, the accepted method of assessing damages to the leasehold is to determine the annual difference between the contract rent and the economic rent, to multiply the annual difference by the number of years left under the lease, and then to discount that sum to determine its present value. *Slavitt* v. *Ives*, 163 Conn. 198, 208, 303 A.2d 13; *Barnini* v. *Sun Oil Co.*, 161 Conn. 59, 64, 283 A.2d 217. In a partial taking such as in the present case, the same rule is generally followed except that the value of the leasehold before and after the taking must be determined. The measure of damages is the difference between the before and after values of the leasehold. *Great Atlantic & Pacific Tea Co.* v. *State of New York*, 22 N.Y.2d 75, 86, 238 N.E.2d 705; 4 Nichols, Eminent Domain (3d Ed. Rev.) § 12.42 [3]; annot., 3 A.L.R.2d 286, §§ 4, 23.

---

[1] The plaintiffs abandoned at oral argument the claim that New London Shopping Center is not entitled to any part of the increase in the award because it did not appeal from the commissioner's assessment ·of $28,000 in damages or intervene in the plaintiffs' appeal.

Such was the procedure followed in this case. The referee found, and the plaintiffs do not dispute, that the taking did not affect the annual rental of $6000 payable under the lease; that at the time of the taking nine years and five months remained under the existing term of the lease; and that it was reasonably probable that the first option to renew the lease for twenty-five years would be exercised. The referee further found that the economic rent for the leasehold before the taking was $20,640 per year, and that the economic rent after the taking was $17,200 per year. Thus the leasehold had a value of $14,640 per year before the taking and a value of $11,200 per year after the taking, for an annual difference of $3440 attributable to the taking. The annual difference of $3440, when multiplied by thirty-four years and five months, amounts to $118,393. While the record does not disclose what technique the referee used to discount that sum to present value, the plaintiffs have not briefed the point and we consider any claim of error regarding discounting to be abandoned.

The referee's findings as to the before-taking and after-taking value of the leasehold are supported by the testimony and report of the appraiser for New London Shopping Center. Indeed, they accord with estimates offered by the plaintiffs' appraiser in the plaintiffs' appeal from the commissioner's award. The plaintiffs' inconsistent attack on the referee's findings is based on the argument that the taking of access rights to South Service Road did not interfere with the highest and best use of the plaintiffs' land as the site for an additional commercial building in the shopping center, because New London Shopping Center enjoys ample access to the shopping center from

other roads in the area and still retains considerable frontage on South Service Road. The testimony of the defendant's appraiser on this point, which the referee was entitled to credit, was that the taking deprived New London Shopping Center of the opportunity to construct a commercial building on the plaintiffs' property that would be immediately accessible from South Service Road, and that any structural use of the property would now entail a less convenient traffic pattern that would require use of the shopping center's interior land and would interfere with other traffic flows in the shopping center. It is of no importance that as of the time of trial the commissioner had not acted to close off the plaintiffs' frontage on South Service Road. Even though there be no physical taking, under our statutory procedure the taking is complete when the assessment is filed with the clerk of the Superior Court. *Slavitt* v. *Ives,* 163 Conn. 198, 206, 303 A.2d 13; *Clark* v. *Cox,* 134 Conn. 226, 228, 56 A.2d 512. We conclude that the finding is not subject to material correction and that the referee's award to New London Shopping Center was properly derived.

The plaintiffs, furthermore, were fully compensated for their loss. There was no provision in the lease for abatement of rent in the event of a partial taking. The plaintiffs' rental income stream, therefore, was unaffected by the taking of access rights. Only their reversionary interest in the property was damaged, to the extent of $43,000, as was adjudicated in the plaintiffs' appeal from the commissioner's assessment. The referee found, and the plaintiffs do not contest, that the present value of a $43,000 reversionary interest in land at the

end of thirty-four years and five months, discounted at a reasonable factor of .023085 (about 11 percent), is approximately $1000.

In their reply brief, the plaintiffs have asserted that their claims of error are supported by the recent case of *Connecticut Sand & Stone Corporation* v. *Avon,* reported with the companion case of *Toffolon* v. *Avon,* 173 Conn. 525, 378 A.2d 580. In that case we held that Connecticut Sand and Stone Corporation was entitled on remand to such severance damages as it could prove for the total taking of a parcel of land leased to the corporation and used in connection with a sand and gravel business it conducted on a contiguous parcel which it owned. The reason for our decision was that "[t]he two tracts were in use as one unit for the same purpose. When the contiguous parcel was taken, the usefulness of the remaining parcel was impaired. Whether the plaintiff had a lease or owned the parcel in fee, the plaintiff was injured." *Toffolon* v. *Avon,* supra, 540.

Relying on this principle, the plaintiffs claim that because there was no proof that the shopping center as a whole had been damaged by the taking of access rights to South Service Road, it was error to award any part of the damages to New London Shopping Center. The short answer is that the referee found that the highest and best use of the plaintiffs' land was indeed as part of the shopping center, but not limited to the parking of cars. It was found that the site could be used for another commercial building, but that the taking of direct access rights to South Service Road would adversely affect such use. As we have stated, those findings are sup-

ported by the evidence and agree with the testimony of the plaintiffs' own appraiser in the prior proceeding to assess damages.

There is no error.

In this opinion the other judges concurred.