BRADLEY FACILITIES, INC. *v.* J. WILLIAM BURNS,
COMMISSIONER OF TRANSPORTATION
(13458)

HEALEY, SHEA, CALLAHAN, HULL and SANTANIELLO, Js.

Argued October 14—decision released December 27, 1988

*Lawrence M. Lapine,* with whom were *Thomas M. Cassone* and, on the brief, *Christopher R. Bello,* for the appellant (plaintiff).

*Michael J. Lombardo,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (defendant).

SHEA, J. In this action the plaintiff, Bradley Facilities, Inc., appealed from the assessment of damages filed by the defendant commissioner of transportation pursuant to General Statutes §§ 13b-42 (e) and 13a-73 in taking by eminent domain the plaintiff's leasehold interest in an air freight terminal at Bradley International Airport. In accordance with General Statutes § 13a-76, a state trial referee, *Hon. Charles S. House,* was appointed to reassess the damages, and he rendered judgment awarding the plaintiff $145.38 as damages for the taking. From that judgment the plaintiff has appealed to the Appellate Court, and the appeal has been transferred to this court.

The principal issue is whether the assessment of damages is to be determined upon the basis of the fair market value of the leasehold taken or must be made in accordance with a condemnation clause of the lease, as the referee concluded. We conclude that the condemnation clause is applicable and determinative of the award. Accordingly, we find no error.

The significant facts are undisputed. On October 18, 1961, the state leased to the plaintiff a parcel of land at Bradley airport in Windsor Locks upon which the tenant was obliged to construct a building and other facilities to be used as an air freight terminal which would become the property of the lessor upon completion of construction. By an amendment to the lease on July 27, 1962, it was agreed that the original lease term would be the twenty year period from September 1, 1962, through August 31, 1982. The lessee was given options to extend the term of the lease for two consecutive periods of five years each. In December, 1979, the plaintiff notified the state that it was exercising these renewal options, thus extending the term of the lease for an additional period of ten years commencing September 1, 1982. On January 30, 1980, the state informed the plaintiff that plans for improvement of

the airport made it necessary to acquire the plaintiff's leasehold interest by negotiation or by condemnation and that the state intended to complete this acquisition during the original lease term that would expire on August 31, 1982.

The lease between the parties contained a clause providing that, in the event of a condemnation during its original term, the lease would terminate and "there shall be paid or turned over to Tenant, as or from the award for such taking, a sum" representing the unamortized investment of the tenant in the lease allocated over the original lease term.[1]

---

[1] The text of the condemnation clause in the lease was as follows: "28. Condemnation. In the event that the entire Demised Premises, or so much thereof that the remainder is not useful to Tenant, be taken by condemnation or eminent domain during the Original Term of this lease, this lease shall terminate, and there shall be paid or turned over to Tenant, as or from the award for such taking, a sum calculated by multiplying the Tenant's Original Investment (as hereinafter defined) successively by two fractions: (1) a fraction whereof the numerator is the number of days between the date of the vesting of title and the date of expiration of the Original Term of this lease, and the denominator is the number of days in the Original Term, and (2) a fraction whereof the numerator is the then rental value immediately before such taking of the premises taken and the denominator is the then rental value of the entire Demised Premises immediately before such taking. Nothing herein contained shall require Landlord to pay to Tenant any sum in excess of the total award for such taking.

In the event of any other partial taking, this lease shall terminate only as to the part so taken, and the Fixed Rent for the balance of the then current term shall be reduced by the fraction last above set forth, but Landlord shall, from its share of the total award or otherwise, bear the expense of the restoration to a rentable condition of the untaken balance of the Demised Premises.

As used herein, the phrase 'Tenant's Original Investment' shall mean the total costs to Tenant of the improvements specified in Article 1 hereof, plus all expenses of Tenant incurred in connection therewith and capitalized by Tenant in accordance with good accounting practice.

If, at any time during the Original Term or any extended term hereof, the whole or any part of the Demised Premises or of the Building or of Tenant's interest under this lease shall be taken or condemned by any competent authority for temporary use or occupancy, this lease shall not terminate by reason thereof, and Tenant shall continue to pay in the manner

In 1982, the state notified the plaintiff of its intention to proceed with a condemnation of the leasehold. The plaintiff brought an action against the defendant to enjoin the taking. This action was settled through negotiations, however, and terminated on August 17, 1982, in a judgment by stipulation. Under the stipulation it was agreed that the state would continue with its plans for expansion of Bradley airport, which included the proposed demolition of the building occupied by the plaintiff. The state agreed, however, not to proceed with an actual condemnation of the leasehold of the existing air freight terminal operated by the plaintiff until a substitute facility had been constructed and was ready for occupancy. The stipulation also provided that, if the state should exercise its right of eminent domain, the condemnation should be deemed to have occurred on August 30, 1982, one day before the expiration date of the original term of the lease. The parties also agreed that the plaintiff's acceptance of such date as the condemnation date would not constitute a waiver of any of its rights with respect to the condemnation award.

---

and at the times herein specified, the full amounts of the rent and all additional charges payable by Tenant hereunder, and, except only to the extent Tenant may be prevented from so doing pursuant to the terms of the order of the condemning authority, Tenant shall continue to perform and observe all of the other terms, covenants, conditions and obligations hereof on the part of Tenant to be performed and observed, as though such taking had not occurred. In the event of any such taking, Tenant shall be entitled to receive the entire amount of any award made for such taking, whether paid by way of damages, rent or otherwise, unless such period of temporary use or occupancy shall extend beyond the expiration date of the Original Term of this lease or (in the event that the term hereof shall have been extended as hereinafter provided) of any extended term hereof, in which case such award shall be apportioned between Landlord and Tenant as of such date of expiration. The existence or possible continuation of any such period of temporary use or occupancy shall not affect the right of Tenant, as against Landlord, to exercise any of Tenant's options to extend the term of this lease."

On April 2, 1984, the defendant filed a certificate of taking for the plaintiff's leasehold interest and assessed the damages at $1. The plaintiff, which had continued to operate the air freight terminal after the stipulated judgment had been rendered, remained in possession until some time in July, 1984.

At the hearing before the referee, the plaintiff presented evidence that the fair market value of its leasehold interest was $1,066,000 based upon the assumptions that the condemnation clause of the lease was inapplicable and that the unexpired term of the lease was not limited to the original expiration date of August 31, 1982. The state's sole witness was an accountant who testified that he had calculated the damages in accordance with the formula set forth in that condemnation clause and had thus determined the damages for the taking to be $146.38. The referee accepted this computation and, allowing for the $1 deposited with the clerk of court at the time the taking certificate had been filed, rendered judgment for the plaintiff to recover $145.38 additional damages plus an expert witness fee of $3000.

The plaintiff claims on appeal (1) that the language of the condemnation clause bars its application in this case, (2) that the parties never intended that the clause should apply to a taking by the state, (3) that inequitable conduct on the part of the state should bar it from acquiring the plaintiff's leasehold for the small sum awarded, and (4) that in enacting General Statutes § 13b-42 (e), which specifically authorized the defendant to condemn "any interest . . . in land, buildings, equipment or facilities that he has . . . leased or granted in any state airport," and in applying it to the plaintiff's leasehold, the state had violated the constitutional rights of the plaintiff under our state and federal constitutions.

## I

The plaintiff maintains that the condition precedent to the application of the condemnation clause, "that the entire Demised Premises . . . be taken by condemnation or eminent domain," was never fulfilled and that the clause, therefore, is inapplicable. It contends that a taking of the "entire Demised Premises" refers to a taking of the fee in the land described in the lease, which the state held before the execution of the lease and continued to hold after the taking of the plaintiff's leasehold interest. A condemnation of the leasehold only, the plaintiff argues, does not constitute a taking of the "entire Demised Premises."

The significance of the word "entire," however, is readily apparent in the context of the clause that follows the phrase "entire Demised Premises": "or so much thereof that the remainder is not useful to Tenant." Its reference is to the physical parcel of land being leased and not to the diverse interests that may exist in that land, such as those of the lessor and the lessee. This interpretation of the word "entire" is reinforced. by the reference in the second paragraph of the condemnation clause to "any other partial taking," allowing for a reduction in rent where the portion of land condemned does not render the remaining leased property useless to the lessee. Thus the use of the word "entire" does not support the plaintiff's claim that the condemnation clause was intended to apply only where all of the outstanding interests in the land that is the subject of condemnation are acquired.

The term "Demised Premises" is defined in the lease to mean the "particular premises shown outlined in red on the annexed copy" of a specified site plan "(which particular premises so shown, with the building and improvements to be constructed thereon, are hereinafter

called the 'Demised Premises')." The word "demised" in this context means "leased." Webster's Third New International Dictionary; Black's Law Dictionary (5th Ed.). "Premises" in common parlance signifies land with its appurtenances, though its more appropriate meaning in a conveyance, such as a deed or lease, is "that which is conveyed." *Holbrook* v. *Debo,* 99 Ill. 372, 381 (1881); see *Zandri* v. *Tendler,* 123 Conn. 117, 123, 193 A. 598 (1937).

When we speak of taking land by eminent domain, we use the word "taking" figuratively, because the land remains physically undisturbed. What is taken or acquired by the condemning authority are the various interests of others in the land. While the condition that triggers the operation of the condemnation clause in the lease before us is that the "entire Demised Premises, or so much thereof that the remainder is not useful to Tenant, be taken by condemnation or eminent domain," the parties must be deemed to have contemplated as the precipitating event the transfer of rights in the land to the taking authority.

The plaintiff maintains, however, that this phraseology must be construed to refer only to an acquisition of the whole bundle of rights in the land, the fee simple, by some agency other than the state, which already owned the fee. In such a condemnation, which the federal government conceivably might have brought, an award, corresponding to the total value of the land and improvements taken, would have been made. This sum, nevertheless, would have been allocated between the state and the plaintiff pursuant to the formula contained in the condemnation clause. The result would have given the plaintiff the same amount for the termination of its leasehold as it is entitled to receive under the judgment of the trial court.

The position of the plaintiff is that, if a condemning authority, whether state or federal, should choose to take only its leasehold interest, the parties intended the condemnation clause formula not to apply. It is highly improbable, however, that such an intention would have been entertained because it would result in the plaintiff receiving significantly disparate amounts as compensation for the taking of the same leasehold interest depending upon whether the fee were also taken.

Contrary to the plaintiff's claim, the lease does contain language applicable to a taking of only its leasehold interest. The condemnation clause provides that upon a taking "this lease shall terminate, and there shall be paid or turned over to Tenant, *as or from* the award for such taking, a sum calculated" in accordance with the formula set forth. (Emphasis added.) The alternative, "as . . . the award for such taking," in contrast to "from" such award, is a clear indication that a taking of only the leasehold was contemplated by the parties as one of the events triggering the condemnation clause. The plaintiff could receive a sum "as . . . the award for such taking" rather than "from" such award only when its interest, but not that of the state, was taken in a condemnation proceeding.

We conclude that there is nothing in the language of the condemnation clause to support the plaintiff's claim that it was intended to become operative only when the state's interest, as well as the lessee's interest, is taken by eminent domain.

## II

The plaintiff's second claim, that the parties to the lease never intended that the condemnation clause should apply to a taking by the state, is closely related to the claim we have rejected, that the language of the clause precludes such an application. In support of its

second claim, the plaintiff contends that (1) at the time the lease was executed, the defendant had no statutory authority to condemn facilities at a state airport, as now provided by § 13b-42 (e),[2] and that (2) the sole purpose of the condemnation clause was to provide for the possibility of a taking by some federal agency. Again we note that the plaintiff would have been entitled to receive exactly the same award for the condemnation of its leasehold interest by a federal authority as it has received under the judgment as compensation from the state, because the condemnation clause formula is applicable to any taking by eminent domain. The plaintiff does not claim that it would have been better off if the condemning authority had

[2] General Statutes § 13b-42 (e) provides as follows: "The commissioner may, in the name of the state, purchase, take or acquire any interest, in whole or in part, in land, buildings, equipment or facilities that he has sold, leased or granted in any state airport, state airport site or any part thereof pursuant to subsection (b) of this section. The commissioner's determination that such purchase, taking or acquisition is necessary shall be conclusive. Any taking shall be in a manner prescribed in section 13a-73 for the taking of land for highway purposes."

This provision was enacted in 1981. Public Acts 1981, No. 81-472, § 127. General Statutes § 13b-42 (c), the statutory predecessor of which was enacted in 1947; Public Acts 1947, No. 337, § 1; also arguably may have authorized the condemnation of the plaintiff's leasehold interest: "The commissioner may . . . purchase or take and, in the name of the state, may acquire title in fee simple to, or any lesser state, interest or right in, any airport . . . owned or controlled . . . by any other person . . . ." General Statutes § 13b-36 (a) also may have provided such authority: "The commissioner may purchase or take and, in the name of the state, may acquire title in fee simple to, or any lesser estate, interest or right in, any land, buildings, equipment or facilities which the commissioner finds necessary for the operation or improvement of transportation services." This statute had been amended in 1974 by substituting "transportation" services for "rail or motor carrier" services. Public Acts 1974, No. 74-342, § 37. An intradepartmental memorandum of counsel for the transportation department dated July 26, 1979, which discusses problems involved in planning the condemnation of the plaintiff's leasehold, concluded that the application of these existing statutes might be "questioned." We are not required to resolve the issue of the applicability of these earlier statutes in deciding this case.

not been the state, but that it had a reasonable expectation that no condemnation by the state was likely to occur during the term of the lease.

"It is a fundamental principle of law that the power to appropriate private property for public use is an attribute of sovereignty and essential to the existence of government." *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 586, 87 A.2d 139 (1952). "But into all contracts, whether made between States and individuals or between individuals only, there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the preexisting and higher authority of the laws of nature, of nations, or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, wherever a necessity for their execution shall occur. Such a condition is the right of eminent domain." *West River Bridge Co.* v. *Dix,* 47 U.S. (6 How.) 507, 532–33, 12 L. Ed. 535 (1848).[3] "It

---

[3] In *West River Bridge Co.* v. *Dix,* 47 U.S. (6 How.) 507, 532, 12 L. Ed. 535 (1848), the state of Vermont had in 1795 granted the plaintiff the exclusive privilege of erecting a toll bridge across a river and this franchise was to continue for one hundred years. In 1839 the Vermont legislature enacted a statute authorizing the taking of private property, including franchises, for the purpose of laying out public highways. The United States Supreme Court rejected the action brought by the plaintiff to enjoin the condemnation, holding that the taking of the franchise did not violate the prohibition in article I, § 10, of the federal constitution against state enactment of any "law impairing the obligation of contracts." The opinion of the court relied partly upon the case of *Enfield Toll Bridge Co.* v. *Hartford & New Haven Railroad Co.,* 17 Conn. 454 (1846), where this court had reached a similar conclusion in sanctioning a breach of a legislative franchise to erect a bridge across the Connecticut river subject to the payment of compensation.

attaches to every man's land, and is paramount to his right of ownership. All titles are held subject to it." *Water Commissioners* v. *Johnson,* 86 Conn. 151, 164, 84 A. 727 (1912). "[A] leasehold interest acquired from the State is as completely subject to condemnation for public use as a title derived from any other source . . . ." *Cox* v. *Revelle,* 125 Md. 579, 584, 94 A. 203 (1915); see *Danbury* v. *Danbury Airport Corporation,* 9 Conn. Sup. 319, 321 (1941).

The plaintiff has not disputed these principles but maintains that the claimed absence of authority for the defendant to condemn airport property in 1961,[4] when the lease was signed, might reasonably have been relied upon as assurance that only a taking by some federal authority would cause the lease to terminate pursuant to the condemnation clause. The plaintiff acknowledges that parties are presumed to have contracted with reference to existing law; *Hatcho Corporation* v. *Della Pietra,* 195 Conn. 18, 21, 485 A.2d 1285 (1985); but contends that it was not bound to anticipate the enactment of § 13b-42 (e), which nineteen years later authorized the defendant to condemn its leasehold.

Since the condemnation clause of the lease, as we have concluded in Part I, is compatible with a taking by any authority having the power to take property by eminent domain, it does not inhibit in any manner the state's exercise of that power by enacting legislation to implement this inherent attribute of sovereignty to which all contracts, including this lease, are subject. *West River Bridge Co.* v. *Dix,* supra. In signing the lease the plaintiff became bound by a reasonable construction of its terms. That document contains no provision to assure the plaintiff that the state would not exercise its power of eminent domain during the lease term. Even if statutes in existence at the time the lease

---

[4] See footnote 2, supra.

was executed might have been inadequate to support the taking of a leasehold at Bradley airport, the plaintiff must be presumed to have been aware that the legislative branch of the state, the lessor, might at any time enact the necessary legislation to do so. The plaintiff does not claim to have bargained for any restriction upon the power of the state to enact such legislation during the term of the lease. "[A] promise not expressly made will not be read into a contract unless it arises by necessary implication from the terms of the agreement." *Bria* v. *St. Joseph's Hospital,* 153 Conn. 626, 631, 220 A.2d 29 (1966); *Texaco, Inc.* v. *Rogow,* 150 Conn. 401, 408, 190 A.2d 48 (1963). In executing the lease, the plaintiff is presumed to have been aware that it contains no exception to the applicability of the condemnation clause for a taking initiated by the state. Since the language of the clause is sufficiently broad to include a condemnation by the state as a triggering event, the plaintiff gains nothing from its claimed expectation that the clause would apply only to a taking by some federal authority.

In asserting that the sole purpose of the condemnation clause was to provide for the possibility of a federal taking, the plaintiff has not referred to any evidence concerning the actual intentions of the parties in 1961 when the lease was executed. It relies instead upon various intradepartmental memoranda prepared at the time the condemnation of the leasehold was under consideration in which counsel for the transportation department expressed the opinion that "the intent of the clause was to relate to a Federal takeover since the State at that time did not have a clear-cut statutory right to condemn out its own lease."[5] The opinion of this official of the transportation department, rendered about twenty years after the lease had been

---

[5] See footnote 2, supra.

executed, does not constitute evidence of the intention of the parties at the time of its execution. Further, the state is not bound by the construction of the lease made by this official solely for use of the department, which we have concluded in Part I was erroneous.

## III

The plaintiff claims that the state should be barred from invoking the formula in the condemnation clause of the lease to limit the award because of its alleged inequitable conduct in seeking to condemn the plaintiff's leasehold interest "during the Original Term" of the lease simply for the purpose of saving money. The defendant relies upon the fact that the state did not actually file its notice of condemnation until April 2, 1984, and that the plaintiff was not required to vacate the leased premises until July, 1984. The earlier attempt by the state in 1982 to condemn the leasehold had been forestalled by the plaintiff's action seeking an injunction. The stipulated judgment terminating that action had specified that, if the state should later commence a condemnation proceeding, it would be deemed to have occurred on August 30, 1982, a date within the original lease term during which the condemnation clause was applicable.

There was ample evidence that when the state notified the plaintiff in 1982 of its intention to acquire the leasehold prior to August 31, 1982, the expiration date of the original lease term, it was motivated by a desire to meet its construction schedule as well as by the circumstance that the formula in the lease condemnation clause would operate to limit the amount of the award only for a condemnation occurring within the original term. Under the stipulated judgment, the parties agreed that a later condemnation would be deemed to have occurred within the original term and also that, until a substitute air freight facility had been con-

structed, the plaintiff could remain in possession of the existing facility. There is nothing inequitable in holding the plaintiff to its bargain concerning the effective condemnation date when it has enjoyed the fruits of the concession obtained from the state as part of the stipulation that enabled it to operate the existing facility for almost two years after the condemnation might otherwise have occurred. It can hardly rely upon the delay in the actual filing of the condemnation notice as support for its contention that the state acted inequitably in attempting to commence the condemnation within the original lease term, when that delay resulted from its agreement with the state.

Furthermore, the claim that the state acted inequitably in seeking to take the plaintiff's leasehold interest before a sufficient necessity had arisen raises issues that were involved in the earlier action for an injunction. The stipulated judgment must be deemed to have foreclosed the plaintiff from pursuing those claims further. It is true, as the plaintiff contends, that the stipulation contains a reservation of rights clause: "The plaintiff's agreement with said condemnation date shall not be deemed a waiver of its rights in connection with any condemnation award or acquiescence with or to the position of the state or defendant thereto." This language cannot be given the effect of preserving the plaintiff's claim that the state has acted inequitably in exercising its right to condemn within the original term of the lease when the plaintiff agreed in the stipulation that the impending condemnation "shall be deemed to have occurred on August 30, 1982," the day before expiration of such term.

IV

Finally, the plaintiff claims that § 13b-42 (e), the statute authorizing the taking of the plaintiff's leasehold, as applied in conjunction with the lease condemnation

clause, violates the prohibition against the impairment of contract contained in article I, § 10, of our federal constitution.[6]

Our interpretation of the condemnation clause of the lease, which makes it applicable to a taking of the plaintiff's leasehold interest by any authority having the power of eminent domain, including the state, leaves little substance to this constitutional claim. As we have noted, the condemnation of a property right granted by the state does not violate the constitutional prohibition against impairment of contract because all agreements are presumed to have been entered into subject to the condition that the state may elect during the term of the agreement to exercise its power of eminent domain. *West River Bridge Co.* v. *Dix,* supra. The use of that power, of course, imposes on the state the obligation to compensate an owner fairly for the property interest taken. Id. Where parties to a lease have agreed in advance that, in the event of a condemnation, the lessee's award will be calculated pursuant to a prescribed formula, the resulting sum must be deemed fair compensation because it is in accordance with the agreement. However inadequate the amount arrived at through the formula might appear in the absence of such an agreement, an award made pursuant to the agreement cannot be regarded as an impairment of contract.

---

[6] The plaintiff also relies upon the prohibition in the fifth amendment to our federal constitution, applicable to the states by virtue of the due process clause of the fourteenth amendment, providing: "nor shall private property be taken for public use, without just compensation." Further reliance is placed upon a similar provision of our state constitution, article first, § 11, which provides: "The property of no person shall be taken for public use, without just compensation therefor." The discussion in the plaintiff's brief, however, relates to impairment of contract as the basis for the claim of taking property without just compensation. Accordingly, we confine our discussion of this issue to the question of whether there has been an impairment of contract.

We previously have upheld the enforceability of similar condemnation clauses in leases. *Waesche v. Redevelopment Agency,* 155 Conn. 44, 49–50, 229 A.2d 352 (1967); see *United States v. Petty Motor Co.,* 327 U.S. 372, 375–76, 66 S. Ct. 596, 90 L. Ed. 729, reh. denied, 327 U.S. 818, 66 S. Ct. 813, 90 L. Ed. 1040 (1946); annot., 96 A.L.R.2d 1140, 1145. The plaintiff does not challenge that holding and implicitly concedes that, if the condemnor had been some federal authority, it would have been entitled to receive no more than is permitted by the judgment under review. Given our construction that the condemnation clause is applicable regardless of the identity of the condemning authority, there is no basis for claiming a constitutional violation when the plaintiff is to receive the same amount from the state as it would have received if the condemning authority were some federal agency.

There is no error.

In this opinion HEALEY, HULL and SANTANIELLO, Js., concurred.

CALLAHAN, J., dissenting. I respectfully dissent. It appears clear to me that the condemnation clause in the lease was not intended to apply to a taking of the plaintiff's leasehold interest by the lessor, the defendant commissioner of transportation. Therefore, the formula for assessing damages contained in that clause has no application to the present situation. Consequently, the trial referee should not have used the formula in the lease when assessing damages, but rather should have employed the usual method of measuring damages for the taking of a leasehold interest. See *Gigliotti v. Wood,* 175 Conn. 243, 246, 397 A.2d 1342 (1978). I believe that he erred in failing to do so.

I would remand this case for a new hearing to determine the value of the plaintiff's leasehold interest,

including the option years,[1] without regard to the formula contained in the condemnation clause of the lease.

---

[1] See *Canterbury Realty Co.* v. *Ives,* 153 Conn. 377, 384, 216 A.2d 426 (1966).