[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before this court is a motion for summary judgment filed by the defendant, Sun Oil Company (Sunoco). On September 10, 2002, Sunoco filed a motion for summary judgment on the ground that a condemnation award does not compensate for loss of business opportunity or good will. LMK filed an objection and a memorandum of law in opposition to Sunoco's motion for summary judgment on October 16, 2002, claiming that there are ambiguities in the lease agreement that present an issue of fact which preclude the granting of the motion. For reasons more fully set forth here the court denies the motion for summary judgment.
 FACTS
On April 22, 2002, the plaintiff, LMK Enterprises, Inc. (LMK), filed a single-count complaint against the defendants, Sunoco, the commissioner of transportation (commissioner), and the town of East Haven, Connecticut.[1] This action arises from a dispute over the amount of a condemnation award due to each party after certain East Haven property leased by Sunoco to LMK was taken by the commissioner through the power of eminent domain as part of a plan to widen Interstate 95.
LMK alleges a record interest in premises known as 71 Frontage Road, East Haven, Connecticut. LMK further alleges that it leased the premises from Sunoco, and operated a Sunoco gas station and a Sunoco A Plus convenience store on the premises in accordance with the lease. The complaint is brought pursuant to General Statutes § 48-21 and alleges that the terms of the lease agreement between LMK and Sunoco were fixed and nonnegotiable and that the lease is therefore a contract of adhesion. LMK asserts that because the lease is a contract of adhesion, its terms should not be enforced. Specifically, LMK refers to the portions of the lease providing that Sunoco: could terminate the lease in the event of condemnation; and refuse to share the condemnation award with LMK. LMK claims a portion of the condemnation award in the amount of its leasehold interest and as compensation for its alleged loss of CT Page 2583 business opportunity and good will.
 DISCUSSION
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) LaFlamme v. Dallessio, 261 Conn. 247, 250, 802 A.2d 63 (2002). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Buell Industries,Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527, 550, 791 A.2d 489
(2002). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500,538 A.2d 1031 (1988).
Sunoco moves for summary judgment on the grounds that (1) LMK admitted in discovery that its damages arising from the condemnation do not include the loss of the leasehold; (2) Connecticut law does not allow for compensation for lost business opportunity or good will in the context of a condemnation proceeding; (3) neither federal nor state law requires Sunoco to compensate LMK for lost business opportunity or good will; (4) LMK expressly waived any claims for lost business opportunity or good will in its lease agreement with Sunoco; (5) Connecticut law does not deem the condemnation of business property to harm the value of the business itself; and (6) the town of East Haven has no claim to the condemnation award because the property taxes on the subject premises have been paid in full.
In support of its motion, Sunoco submits LMK's discovery responses, wherein Laila Gilani, treasurer and co-owner of LMK, specified the amount of damages that LMK is seeking in compensation for its loss of the leasehold, business opportunity and good will. (Sunoco's Memorandum of Law in Support of its Motion for Summary Judgment, Affidavit of William O'Sullivan, September 6, 2002 [O'Sullivan Affidavit], Exhibit A.)[2]
CT Page 2584 Sunoco also submits copies of the premises lease, the APlus convenience store lease, and the motor fuel supply agreement between Sunoco and LMK. (Sunoco's Memorandum, Affidavit of Richard Gaines, September 6, 2002 [Gaines Affidavit], Exhibits A, B, C.) Specifically, Sunoco refers to the premises lease, which provides that LMK "shall have no claim to any portion of a condemnation award payable to Sunoco with respect to Premises; provided, however, [LMK] may be entitled to any separate award payable to [LMK] for taking of [LMK's] Leasehold interest, loss of business opportunity or goodwill." (Gaines Affidavit, Exhibit A, ¶ 2.15(B).) Sunoco also specifically relies on the APlus convenience store lease, which provides that "[i]n the event the Premises Lease terminates prior to the end of the Term, resulting in the automatic termination of this Agreement . . . and in the event you were not then in default under the Agreement, you shall have a right to relocate the franchise business and Sunoco shall agree to enter into a Franchise Agreement for the balance of the Operating Term . . ." (Gaines Affidavit, Exhibit B, ¶ 2.06(B).) Finally, Sunoco submits a copy of the East Haven 2002 real estate tax bill on the subject property for the amount of $11,382.94, as well as a copy of Sunoco's check made payable to the town in that full amount. (O'Sullivan Affidavit, Exhibit B.)
LMK maintains that the provisions in the contracts between the parties regarding the subject premises are, at the very least, ambiguous, and that ambiguities in the contracts present a question of fact that must be construed against the drafting party. The specific ambiguity to which the plaintiff refers relates to the provision regarding compensation arising out of condemnation proceedings. LMK submits the affidavit of Laila Gilani, in which Gilani attests that she and her husband, Masood Akhtar, had purchased the Sunoco franchise for the sum of $175,000, plus the cost of the inventory of the convenience store and the gasoline on hand, on June 28, 1998. (LMK's Objection to Sunoco's Motion for Summary Judgment, Affidavit of Laila Gilani, October 14, 2002 [Gilani Affidavit], ¶ 4.) LMK also submits a copy of the franchise agreement between Gilani and Akhtar and the former franchisee of the premises, showing that the franchise was purchased for the sum stated by Gilani in her affidavit, as well as a copy of a letter to LMK from Jeffrey Brinn, Sunoco's division marketing manager, stating that the franchise had been assigned to LMK. (Gilani Affidavit, Exhibit A; Gilani Affidavit, Exhibit B.)[3] LMK further submits a copy of the premises lease between Sunoco and LMK. (LMK's Memorandum of Law in Opposition to Sunoco's Motion for Summary Judgment, Exhibit A.) Finally, LMK submits a transcript of Brinn's deposition, in which he stated that the premises lease between LMK and Sunoco is a standard form agreement drafted by Sunoco, the terms of which were not subject to negotiation. (LMK's Memorandum, Exhibit B.)[4]
CT Page 2585
General Statutes § 13a-73 provides in relevant part that "[t]he commissioner may take any land he finds necessary for the layout, alteration, extension, widening, change of grade or improvement of any state highway . . . and the owner of such land shall be paid by the state for all damages and the state shall receive from such owner the amount or value of all benefits resulting from such taking, layout, alteration, extension, widening, change of grade or other improvement." General Statutes § 48-21 provides in relevant part that "[i]n case of dispute as to the amount [of such condemnation award] due any . . . mortgagee, lienor or other encumbrancer [of land taken for public use], the money may be deposited with the clerk of the superior court for the judicial district in which such property is situated, and anyone claiming an interest in the same may bring a suit therefor, making all others claiming interest in the fund defendants, and the court may determine the rights in the fund of all parties to such suit, and may tax costs according to the rules of equity."
"When real property is condemned the general rule is that nothing should be included in the award in the way of compensation for the loss of a business conducted thereon unless specifically authorized by statute . . ." Wronowski v. Redevelopment Agency, 180 Conn. 579, 584, 430 A.2d 1284
(1980). In the case of a condemnation, "it is the land which is to be appropriated, not the business. Provided the condemnee is compensated for his land, building and appurtenances thereto, and provided the trier has considered the use which is being made of the property if, in truth, that use of the property enhances its value . . . it is reasonable to assume that the condemnee has received just compensation for the taking and can begin anew, his good will and business reputation intact, in a different location." (Citation omitted; internal quotation marks omitted.) Laurel,Inc. v. Commissioner of Transportation, 180 Conn. 11, 39, 428 A.2d 789
(1980). The loss of a motor fuel franchise is the loss of a business and not the loss of an interest in land compensable under § 48-21, as "[General Statutes §] 42-133k (1) defines `franchise as any contract
(A) between a refiner or distributor; (B) between a refiner and a retailer; (C) between a distributor and another distributor; or (D) between a distributor and a retailer, under which a refiner ordistributor, as the case may be, authorizes or permits a retailer ordistributor to use, in connection with the sale, consignment, ordistribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.' The definition of `franchise' under the federal statutes is identical." (Emphasis added.) Alender v.Getty Petroleum Marketing, Inc., Superior Court, judicial district of New Britain, Docket No. CV 000503902 (June 4, 2001, Shortall, J.). CT Page 2586
In the present case, it is undisputed that as a lessee of the subject property, LMK is an "encumbrancer" of the subject premises and may properly bring suit in the superior court pursuant to General Statutes § 48-21 for a determination of the amount, if any, of the condemnation award to which it is entitled for the loss of its leasehold. Sunoco's motion for summary judgment, however, relies heavily on LMK's answers to Sunoco's interrogatories, in which Gilani purportedly admits that LMK does not seek compensation for the loss of its leasehold, but for the loss of its business opportunity and good will. In her answers to Sunoco's interrogatory requesting the amount of damages LMK claims to have suffered from the loss of its leasehold, Gilani states that such damages amount to "[t]wo hundred seventy-five thousand dollars ($275,000.00)." (O'Sullivan Affidavit, Exhibit A, ¶ 1.) Gilani further states that "[t]he loss of the lease eliminated [LMK]'s ability to conduct its business at the leased premises and therefore [LMK] lost the business opportunity and the value of any good will it had built up by doing business at the subject premises." (O'Sullivan Affidavit, Exhibit A, ¶ 1.) In answer to Sunoco `s request that she state with particularity the methodology used in arriving at the amount of $275,000, Gilani responds that "[t]he lost value of LMK's interest in the lease represents a calculation of the amount that LMK paid for the leased business in June 1999 as well as comparable sales of Sunoco station[s] in the area based upon their historic sales." (O'Sullivan Affidavit, Exhibit A, ¶ 2.) In response to Sunoco's request for a statement of what amounts LMK claims to have suffered from the loss of its business opportunity and good will, Gilani references the same $275,000 claimed for the loss of the leasehold. (O'Sullivan Affidavit, Exhibit A, ¶¶ 3, 5.)
Sunoco claims that Gilani's answers to the interrogatories amount to an admission by LMK that it does not seek any compensation from the loss of its leasehold, but only from its loss of business opportunity and good will. Sunoco asserts that such an admission is conclusively established against LMK and that the court must grant its motion for summary judgment because, as previously noted, "[i]n the usual taking of business property no allowance is made for the value of the business above the physical assets because the owner can ordinarily continue the enterprise at another location." Gray Line Bus v. Greater Bridgeport Transit District,188 Conn. 417, 421, 449 A.2d 1036 (1982).
"A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it." (Internal quotation marks omitted.) Pedersen v. Vahidy,209 Conn. 510, 519-20, 552 A.2d 419 (1989). "[A] response to an interrogatory [however] is not a judicial admission in the same sense as CT Page 2587 admissions in the pleadings or in open court." Piantedosi v. Florida,186 Conn. 275, 278, 440 A.2d 977 (1982). "When either party in any action has obtained from the other party a disclosure on oath, respecting the matters alleged in any pleading, the disclosure shall not be deemed conclusive, but may be contradicted like any other testimony." General Statutes § 52-200. Therefore, the question of whether summary judgment should be granted in the present case cannot be decided solely on the basis of LMK's discovery responses. In its complaint, LMK specifically "claims compensation from Sunoco for the taking of itsleasehold interest, loss of business opportunity or good will in accordance with the provisions of Part II, paragraph [2.15]B of its lease agreement with Sunoco from the deposit [of the condemnation award check] held by the Clerk of the Court . . ." (Emphasis added.) (Complaint, ¶ 14.) In LMK's counter affidavit, Gilani also attests that LMK "cannot afford to purchase another gas station location unless we receive compensation for our lost lease and business opportunity and good will." (Emphasis added.) (Gilani Affidavit, ¶ 24.) While LMK is not entitled to a portion of the condemnation award as compensation for its loss of business opportunity or good will, LMK may still be entitled to a portion of the sum in compensation for the loss of its leasehold.
Moreover, Sunoco specifically admits in its answer to the complaint that LMK "has asserted a claim as described" in paragraph 14 of the complaint, in which LMK claims damages for the loss of its leasehold as well as for the loss of business opportunity and good will. (Sunoco's Answer, ¶ 14.) When "[t]he defendant [admits an] allegation in his answer . . . [t]his [is] a judicial admission conclusive on the defendant . . ." Jones Destruction, Inc. v. Upjohn. 161 Conn. 191, 199, 286 A.2d 308
(1971). While "unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact on a motion for summary judgment"; New Milford Savings Bank v. Roina,38 Conn. App. 240, 245, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995); in the present case the fact that LMK has at least asserted a claim for the loss of its leasehold is expressly admitted by Sunoco, even if Sunoco denies the claim's merit in the same paragraph.
As to the merits of LMK's claim for the loss of its leasehold, it is true that "[f]or a leasehold to suffer damages, it must have a value. Generally a leasehold has a value if the fair market rental value of the property, sometimes called economic rent, is in excess of the rent reserved in the lease . . . In the case of a total taking of property, the accepted method of assessing damages to the leasehold is to determine the annual difference between the contract rent and the economic rent, to multiply the annual difference by the number of years left under the lease, and then to discount that sum to determine its present value." CT Page 2588 (Citation omitted.) Gigliotti v. Wood, 175 Conn. 243, 246, 397 A.2d 1342
(1978). It may be that in her answers to Sunoco's interrogatories, Gilani incorrectly assessed the amount of damages to LMK's leasehold in that her assessment was not based on the fair market rental value of the property. While the true amount of LMK's leasehold damages may be much smaller than the $275,000 assessed by Gilani, the amount of LMK's leasehold damages, if any, presents an issue of material fact that may even require expert testimony to determine the fair market rental value of the subject premises. See, e.g., Albrecht v. Albrecht, Superior Court, judicial district of New Britain, Docket No. CVN 98 0051679 (April 19, 2002, Crawford, J.). Therefore, Sunoco has failed to meet its burden of showing the absence of any genuine issue of material fact.
For the foregoing reasons, the court denies Sunoco's motion for summary judgment.
Robinson-Thomas, J.